# IN THE SUPREME COURT OF IOWA

No. 71 / 06–0319

Filed September 12, 2008

**IN RE THE MARRIAGE OF LAURA LYNNE BECKER
AND FRED HAROLD BECKER**

**Upon the Petition of
LAURA LYNNE BECKER**,

Appellant,

**And Concerning
FRED HAROLD BECKER**,

Appellee.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Dubuque County, Alan L. Pearson, Judge.

Both parties seek further review of a court of appeals decision regarding their dissolution decree. **DECISION OF COURT OF APPEALS VACATED IN PART AND AFFIRMED IN PART; DISTRICT COURT JUDGMENT AFFIRMED AS MODIFIED.**

Alexander R. Rhoads of Babich, Goldman, Cashatt & Renzo, P.C., Des Moines, for appellant.

Daniel L. Bray and Chad A. Kepros of Bray & Klockau, P.L.C., Iowa City, for appellee.

**WIGGINS**, **Justice**.

Both parties sought further review of the court of appeals decision regarding their dissolution decree. In exercising our discretion on further review, we decide to address only the spousal support issue raised by the wife in her application for further review. Accordingly, in this decision we must determine the adequacy of the spousal support award made by the trial court. Because we disagree with the spousal support award made by the district court, as affirmed by the court of appeals, we vacate in part and affirm in part the decision of the court of appeals, and affirm as modified the judgment of the district court.

### I. Prior Proceedings.

The district court dissolved the marriage of Laura and Fred Becker. In its decree, the court awarded joint legal custody of the minor children to Laura and Fred, with Fred having primary physical care of the children. The court awarded Laura reasonable and liberal visitation rights. Laura was required to pay child support. The court valued the assets of the parties, split the assets equally, and awarded each party a little less than 3.2 million dollars in assets. The court ordered Fred to pay Laura spousal support in the sum of $5000 for forty-eight months, with the support terminating if Laura dies or remarries prior to the expiration of forty-eight months. The support will also terminate if Fred dies prior to the expiration of forty-eight months. The court also required Fred to pay a portion of Laura's legal fees.

Both parties appealed. We transferred the appeal to the court of appeals. The court of appeals revalued some of the assets and ordered that each party receive a little more than 3.3 million dollars in assets. The court of appeals affirmed the spousal support award, modified the

trial attorney fee award, and awarded Laura $2500 in appellate attorney fees.

Laura filed an application for further review. In her application she alleges the valuation of certain of the parties' assets was too low, the spousal support award should be increased, and the award of appellate attorney fees was inadequate. Fred also sought further review alleging the valuation of the parties' assets was too high. We granted both applications for further review.

## II.  Issue.

In considering an application for further review, "we have the discretion to review any issue raised on appeal regardless of whether such issue is expressly asserted in an application for further review." *In re Marriage of Olson*, 705 N.W.2d 312, 315 (Iowa 2005). We also have the discretion not to review any of the issues the parties raised in their applications for further review. *In re Marriage of McKenzie*, 709 N.W.2d 528, 530–31 (Iowa 2006). In exercising our discretion, we choose only to review the court-ordered spousal support. Accordingly, we affirm the court of appeals decision in all other respects. *See id.* at 535 (affirming the court of appeals decision on all matters not considered on this court's further review).

## III.  Scope of Review.

The standard of review is de novo because this is a dissolution case. *Olson*, 705 N.W.2d at 313. Although we give weight to the fact findings of the district court, we are not bound by the district court's findings of fact. Iowa R. App. P. 6.14(6)(*g*).

## IV.  Findings of Fact.

We find the following facts concerning the spousal support issue. Laura and Fred Becker were married on July 9, 1983. The couple was

married twenty-two years at the time of their divorce. They had four children. One child was 20 years of age. The other children had not reached their majority at the time the court filed the decree. Two of the children were twins and 17 years of age. The youngest child was 16 years of age.

Fred attended college but did not complete his degree. Fred began working for his father's limestone quarry business at a young age and eventually formed a partnership called Becker & Becker Stone Co. with his father in 1976. At that point, he and his father shared a 50/50 interest in the company and in a quarry known as the Maquoketa Quarry or the Baldwin property. Eventually Fred obtained more quarry property. In 1986 Fred purchased his father's interest in the company and in the quarry. In 1999 Fred reorganized the partnership into a subchapter "S" corporation and renamed the company Becker & Becker Stone Co., Inc. He was, and still is, the sole shareholder of the company. Since reorganizing the business, Fred receives all the corporation's income, and he reports the corporation's income on his personal tax returns. At the time of the marriage, Fred's premarital assets had a value of $30,000. Fred's primary responsibility during the marriage was to concentrate on making the quarry business a success. Fred's average after-tax income for the five years preceding the dissolution was in excess of $500,000.

Laura had just completed her junior year of college when she married Fred. She completed her degree in business at Loras College in 1984. She became pregnant shortly after the marriage. She worked part-time outside the home as a bank teller until the doctors put her on medical leave. After the birth of their first child she resumed working outside the home on and off until the birth of the twins. After their fourth child started preschool, she again worked part-time outside the

home for a credit union. This job did not last very long. After her stint at the credit union, the only work she did outside the home during the marriage was assisting Fred in the business. Laura's primary responsibility during the marriage was to care for the household and the couple's children.

When Fred and Laura separated, Laura began working part-time at a department store earning $8.00 per hour. Laura testified she could not find full-time employment and most jobs she interviewed for offered salaries between $20,000 and $30,000 per year. Laura would like to obtain a job in marketing. In order to obtain an entry-level job in this field she would have to obtain her master's degree. She believes this will require her to take thirty-six hours of classes if some of her undergraduate courses would transfer.

### V. Applicable Legal Principles.

The payment of alimony is not an absolute right; rather, whether a court awards alimony depends on the particular circumstances of each case. *In re Marriage of Fleener*, 247 N.W.2d 219, 220 (Iowa 1976); *see* Iowa Code § 598.21(3) (2005). Our prior cases are of little value in determining the appropriate alimony award, and we must decide each case on its own peculiar circumstances. *Fleener*, 247 N.W.2d at 220.

The legislature has listed certain factors a court should consider when deciding whether to award alimony. Iowa Code § 598.21(3)(*a*)–(*j*). These factors include:

> *a.* The length of the marriage.
>
> *b.* The age and physical and emotional health of the parties.
>
> *c.* The distribution of property. . . .
>
> *d.* The educational level of each party at the time of marriage and at the time the action is commenced.

*e*. The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

*f*. The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.

*g*. The tax consequences to each party.

*h*. Any mutual agreement made by the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by the other party.

*i*. The provisions of an antenuptial agreement.

*j*. Other factors the court may determine to be relevant in an individual case.

*Id.*

In applying these factors, we have discussed three types of spousal support—traditional, rehabilitative, and reimbursement. *In re Marriage of Francis*, 442 N.W.2d 59, 63–64 (Iowa 1989). Each type of spousal support has a different goal. Traditional spousal support is "payable for life or so long as a spouse is incapable of self-support." *Id.* at 64. Rehabilitative spousal support is "a way of supporting an economically dependent spouse through a limited period of re-education or retraining following divorce, thereby creating incentive and opportunity for that spouse to become self-supporting." *Id.* at 63. The goal of rehabilitative spousal support is self-sufficiency and for that reason "such an award may be limited or extended depending on the realistic needs of the economically dependent spouse." *Id.* at 64. Reimbursement spousal support allows the spouse receiving the support to share in the other

spouse's future earnings in exchange for the receiving spouse's contributions to the source of that income. *Id.* at 63.

### VI. Analysis.

Although Fred had $30,000 worth of assets at the time the parties entered the marriage, neither party had substantial income or wealth at that time. Fred was attempting to grow the quarry business, while Laura was obtaining a bachelor's degree in business. When the parties' children were born, an express or implied decision was made between the parties that Fred would spend his time growing the quarry business and Laura would be responsible for maintaining the home and raising the children. This arrangement became very successful financially. The family lived in a half-million-dollar home, belonged to the country club, and took numerous vacations. By the time the couple separated, Fred and Laura had accumulated assets in excess of 6.6 million dollars, and after taxes Fred was earning over one-half million dollars a year.

In recognition of both parties' contribution to the financial success of their marriage, Fred and Laura each received more than 3.3 million dollars in assets as a property settlement. Fred argues Laura should not be entitled to spousal support because the substantial income she can earn from the property settlement will allow her to live comfortably. Laura's property settlement may allow her to live comfortably; however, we must consider that during the twenty-two years of this marriage, Fred was able to develop an after tax earning capacity in excess of $500,000 while Laura's gross earning capacity is $30,000 at best. Fred and Laura's decision to have Laura abandon her work outside the home hindered her ability to maximize her earning capacity during the marriage.

Applying the factors under Code section 598.21(3), we believe Laura is entitled to an award of spousal support. Laura's expenses to maintain a standard of living reasonably comparable to that she enjoyed during the marriage are $6980. Therefore, the appropriate spousal support award should include three years of support in the sum of $8000 per month. This support obligation shall begin when the first support payment was due under the decree. Fred shall have a credit for all the support he has paid under the decree. If the back support is paid within sixty days after issuance of the procedendo, it shall be paid without interest. If not paid within that time frame, it shall bear interest at the legal rate for judgments from the date each payment was due.

Our intent in granting this award is to allow Laura to use this support to return to school and obtain her master's degree, if she so chooses. Twenty years ago, when she abandoned her career outside the home, a bachelor's degree would have allowed her to obtain an entry-level job in the field of marketing. The trial testimony indicated that in today's market a person needs a master's degree for an entry-level job in the field of marketing. These three years of support will allow Laura to obtain the education necessary to resume the career she abandoned.

After the third year, spousal support will continue for a period of seven additional years at $5000 per month. Our intent in providing this award is to give Laura time to develop her earning capacity past an entry-level position. At that time, her earning capacity together with the return on her investments should allow her to become self-supporting at a standard of living reasonably comparable to the standard of living she enjoyed during the marriage.

Spousal support shall terminate if Laura dies or remarries prior to the expiration of 120 months. The support will also terminate if Fred dies prior to the expiration of 120 months.

We cannot characterize the support we are awarding Laura as strictly rehabilitative or traditional spousal support. Factually, the support award may be a combination of both because this spousal support award will allow Laura to maintain the same standard of living she enjoyed during the marriage throughout the period of time it will take her to become self-sufficient at her maximum earning capacity. Once Laura reaches her maximum earning capacity, she will be able to maintain the same standard of living she enjoyed during the marriage without the necessity of a spousal support award. However, there is nothing in our case law that requires us, or any other court in this state, to award only one type of support. What we are required to do is to consider the factors mandated by the legislature contained in section 598.21(3) when considering a spousal support award. Therefore, even if we cannot characterize the support award as purely rehabilitative or traditional, under the facts of this case the spousal support award we make to Laura best reflects the factors found in section 598.21(3).

**VII. Disposition.**

Because we believe it is necessary to modify the spousal support ordered by the district court, we vacate the decision of the court of appeals and reverse the judgment of the trial court on the issue of spousal support only. We otherwise affirm the decision of the court of appeals. Accordingly, we vacate in part and affirm in part the decision of the court of appeals, and affirm as modified the judgment of the district court.

**DECISION OF COURT OF APPEALS VACATED IN PART AND AFFIRMED IN PART; DISTRICT COURT JUDGMENT AFFIRMED AS MODIFIED.**

All justices concur except Baker, J., who takes no part.