**IN THE COURT OF APPEALS OF IOWA**

No. 16-0415
Filed December 21, 2016

**IN RE THE MARRIAGE OF PATRICK B. DILLON
AND SHELLY ANN DILLON**

**Upon the Petition of
PATRICK B. DILLON,**
        Petitioner-Appellee,

**And Concerning
SHELLY ANN DILLON,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Bremer County, Kurt L. Wilke,

Judge.


        Shelly Dillon appeals the spousal support provision of a dissolution

decree. **AFFIRMED AS MODIFIED.**


        Kevin D. Engels of Correll, Sheerer, Benson, Engels, Galles & Demro,

P.L.C., Cedar Falls, for appellant.

        Lana L. Luhring of Laird & Luhring, Waverly, for appellee.


        Considered by Vogel, P.J., and Vaitheswaran and McDonald, JJ.

**VAITHESWARAN, Judge.**

Shelly Dillon appeals the spousal support provision of a dissolution decree. She also contends the district court acted inequitably in declining to require the parents to share the children's school and extracurricular expenses.

## I.    *Background Facts and Proceedings*

Patrick and Shelly Dillon married in late 1995. They had three children. Nineteen years later, Patrick petitioned for a dissolution. The parents stipulated to joint physical care of the children and agreed to a division of their property. The district court approved the partial stipulation.

At trial, the parents litigated several financial issues, including Shelly's request for spousal support. The district court ordered Patrick to "pay Shelly monthly spousal support in the amount of $1000 for a period of [three years], $750 [for the next three years], and $500 [for two additional years.]" The court did not address the parents' responsibilities with respect to the payment of school and extracurricular expenses.

Shelly moved to enlarge and amend the findings. She sought spousal support of $2000 per month until she reaches sixty-two and, after sixty-two, $1000 per month until Patrick dies, she dies, or she remarries. Shelly also requested a provision requiring each parent to pay half the children's school and extracurricular activity expenses. The district court denied the motion and this appeal followed.

Shelly contends (A) the spousal support award was inequitable, (B) the district court should have specified the expected contribution of each parent for school and extracurricular activities as well as the reimbursement terms for those

expenses and the children's uninsured medical expenses, and (C) she is entitled to an award of appellate attorney fees. Our review of these issues is de novo. *See In re Marriage of Gust*, 858 N.W.2d 402, 406 (2015).

## II. Analysis

### A. Spousal Support

Our dissolution statute sets forth several factors for consideration in a spousal support analysis, including the length of the marriage, the age, health, and education of the parties, the property distribution scheme, the earning capacity of the party seeking support, and the feasibility of the party seeking support to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage as well as the length of time necessary to achieve this goal. *See* Iowa Code § 598.21A (2015). In applying the statute, our courts "have identified three kinds of support: traditional, rehabilitative, and reimbursement." *Gust*, 858 N.W.2d at 408.

Patrick characterizes the award as rehabilitative alimony. Rehabilitative alimony provides support for "an economically dependent spouse through a limited period of re-education or retraining following divorce, thereby creating incentive and opportunity for that spouse to become self-supporting." *In re Marriage of Francis*, 442 N.W.2d 59, 63 (Iowa 1989). Shelly argues a traditional alimony award would have been more appropriate. "The purpose of a traditional or permanent alimony award is to provide the receiving spouse with support comparable to what he or she would receive if the marriage continued." *Gust*, 858 N.W.2d at 408 (citation omitted). "Traditional support is ordinarily of unlimited or indefinite duration." *Id.*

Patrick and Shelly were married for over nineteen years. The length of the marriage supports an award of traditional spousal support, as Shelly requests. *Id.* at 410 ("Traditional spousal support is often used in long-term marriages where life patterns have been largely set and 'the earning potential of both spouses can be predicted with some reliability.'" (citation omitted)). However, Shelly was just forty-one years old at the time of trial, was in good health, possessed a nursing degree from a four-year institution, and earned wages as a nurse for all but five years of the marriage. These factors militate in favor of a rehabilitative award.

At the end of the day, we need not characterize the award as one or the other. *See In re Marriage of Becker*, 756 N.W.2d 822, 827 (Iowa 2008) (noting award was not strictly rehabilitative or traditional and "nothing in our case law . . . requires us, or any other court in the state, to award only one type of support"). Whatever its label, there is no question Shelly is entitled to spousal support.

We turn to the amount and duration of the award. "An award is dependent upon each party's earning capacity and present standards of living, as well as the ability of the paying spouse to meet the obligation and the other party's need for support." *In re Marriage of Moore*, No. 02-1185, 2003 WL 1970442, at *3 (Iowa Ct. App. Apr. 30, 2003).

Patrick's earnings and earning capacity were significantly higher than Shelly's. The district court used a four-year average of Patrick's income as a self-employed attorney and part-time farmer to arrive at annual earnings of $189,434. Shelly earned $40,000 annually. Although she had the potential to increase her earnings by taking coursework to become a nurse practitioner,

Patrick's own estimates indicated she would still earn less than three times the sum he earned.

The district court granted Shelly spousal support totaling $75,000 over an eight-year period. In our view, this sum did not account for the significant earnings disparity. We modify the dissolution decree to provide for monthly spousal support of $2000.

In increasing the amount, we have considered the district court's finding that Shelly inflated her expenses. There is no question her final itemization of expenses was higher than her initial itemization. And there is no question certain items were incorrect. But some discrepancies could be attributed to Shelly's unfamiliarity with the family budget in light of Patrick's management of the finances during the marriage. Nonetheless, we will assume Shelly's original list of expenses was the more accurate list. Even with that assumption, we find an entitlement to an increased award based on the earnings disparity.

The more difficult question is the duration of the award. The length of the marriage might have supported an award of unlimited duration. However, Shelly's relatively young age and the opportunities available to her in the health-care field, lead us to agree with the district court that a permanent award was not warranted. At the same time, Shelly was out of the workforce for the five years preceding Patrick's filing of the dissolution petition and took very little income-generating property from the marriage. We conclude Shelly should receive spousal support of $2000 a month for a period of eight years.

### B. Children's Expenses

Shelly contends the district court acted inequitably in "failing to specify the expected contribution of each party for school and extracurricular activities and the reimbursement of those expenses as well as uninsured medical expenses in the parties' shared care arrangement."

The Iowa Supreme Court addressed the division of children's extracurricular expenses where parents exercise joint physical care of their children and child support has been calculated pursuant to the offset method. *See In re Marriage of McDermott*, 827 N.W.2d 671, 686 (Iowa 2013). The court concluded, "Because both parties are paying support under the offset method and both have an obligation to cover the children's expenses, the court was justified in requiring each party to pay one-half the extracurricular expenses to make sure both spouses pay their fair share." *See also In re Marriage of Killian*, No. 13-1504, 2014 WL 3748304, at *4 (Iowa Ct. App. July 30, 2014) ("[W]here joint physical care is ordered, the district court may require both parents to contribute to the children's extracurricular expenses 'to make sure both spouses pay their fair share.'" (citation omitted)). Based on this language, we modify the dissolution decree to require each parent to pay half of the children's school and extracurricular expenses.

Shelly also seeks to have Patrick's share of the uncovered medical expenses paid within thirty days. Shelly did not furnish evidence that Patrick failed to timely pay these or other expenses. Accordingly, we decline to impose this limitation.

### C.  Attorney Fees

Shelly seeks to have Patrick pay $3000 towards her appellate attorney fee obligation.  "An award of attorney's fees is not a matter or right but rests within the discretion of the court."  *In re Marriage of Benson*, 545 N.W.2d 252, 258 (Iowa 1996).  Because Shelly succeeded in having her spousal support obligation increased and because Patrick's earnings are significantly higher than hers, we grant her request.  Patrick shall pay $3000 toward Shelly's appellate attorney fee obligation.

### III.    Disposition

We modify the spousal support provision of the dissolution decree to grant Shelly $2000 per month in spousal support for eight years.  We also modify the decree to provide that the children's school and extracurricular expenses will be shared equally by the parents.  The remainder of the dissolution decree is affirmed.

**AFFIRMED AS MODIFIED.**