**IN THE COURT OF APPEALS OF IOWA**

No. 16-1484
Filed December 6, 2017

IN RE THE MARRIAGE OF KYLE LANGE
AND JESSICA LANGE

Upon the Petition of
**KYLE LANGE,**
         Petitioner-Appellee,

**And Concerning**
**JESSICA LANGE, n/k/a JESSICA L. SCHNEIDER,**
         Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Clarke County, Patrick W.

Greenwood, Judge.


        A mother appeals the custody and spousal support provisions of a decree

of dissolution. **AFFIRMED.**


        Joseph G. Bertogli, Des Moines, for appellant.

        Cathleen J. Siebrecht of Siebrecht Law Firm, Des Moines, for appellee.


        Heard by Vaitheswaran, P.J., and Potterfield and McDonald, JJ.

**MCDONALD, Judge.**

Jessica Lange n/k/a Schneider challenges several provisions of the decree dissolving her marriage to Kyle Lange.  Jessica argues shared physical care is not in the best interest of the parties' two children and she should receive physical care of the children.  She also seeks a greater amount of spousal support for longer duration.  Finally, Jessica argues Kyle should have been required to pay more of her trial attorney fees.

I.

Jessica and Kyle Lange were married in 2005.  At the time of trial, Jessica was thirty-eight and Kyle thirty-seven.  They have two children, R.L., born in 2008, and A.L., born in 2010.  Both Kyle and Jessica have undergraduate and graduate degrees from Iowa State University.  The couple resided in Osceola throughout their marriage.  Kyle is employed by DuPont Pioneer and makes $154,452.96 annually, plus bonuses.  Jessica worked at John Deere from the beginning of the marriage until she quit in May 2015.  At the time she quit her employment, she earned approximately $57,053 annually.  Jessica testified she quit her employment to become a stay-at-home mother until her children were independent.  Kyle testified Jessica's absence from the workforce was meant to be temporary and Jessica did not tell him she wanted to stay at home until July 2015.  At the time of trial in May 2016, Jessica was seeking employment.

Until shortly before the initiation of this dissolution proceeding, the parties' care arrangement for the children was well established.  Both Kyle and Jessica worked in Des Moines.  Their home was on an acreage approximately 700 feet from Kyle's parents' home.  Kyle and Jessica commuted together from Osceola to

Des Moines. The children were dropped off at daycare at approximately 7 a.m. Kyle's parents picked up the children from daycare at approximately 4:30 p.m. and cared for the children until Kyle and Jessica returned from Des Moines, typically between 6 and 7 p.m. Kyle's parents frequently prepared dinner for the family, and the family frequently ate at Kyle's parents' home. When Jessica quit her employment in May 2015, she provided care for the children while Kyle was at work.

Kyle filed for divorce on August 24, 2015. Kyle, Jessica, and the children all remained in the martial home until February 2016. Once Kyle moved out of the marital home, the parties exercised shared physical care of the children.

At trial, Kyle and Jessica disagreed about the appropriate physical care arrangement for their children. Kyle sought joint physical care while Jessica sought physical care. Jessica argued that even when both parents worked full-time she provided the day-to-day care for the children, including missing work when the children were sick. Kyle testified as to his own involvement in raising the children. His supervisor testified the company worked with Kyle to create a more flexible schedule to allow Kyle to spend more time with the children. A court-appointed custody evaluator found the children were bonded with both parents and benefited from relationships with both parents. The evaluator concluded "[Jessica and Kyle] are more than capable of co-parenting their children in a manner that places the children's needs as a priority."

The trial court granted Jessica and Kyle joint legal custody and joint physical care of the children. The trial court awarded $2000 per month in rehabilitative alimony to Jessica for a period of twenty-four months. Based upon the parties'

disparate earnings, the trial court awarded Jessica $5000 in attorney fees. Jessica appeals all three of these decisions. She seeks physical care, $3000 a month in rehabilitative alimony for sixty months, and $10,000 in trial attorney fees. In addition, she requests appellate attorney fees.

## II.

Review of dissolution cases is de novo. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). The court gives weight to the findings of the district court, particularly concerning credibility, but they are not binding. *Id.* Appellate review must focus on the particular circumstances of the parties; "[p]rior cases have little precedential value." *Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002). The court will only "disturb the district court's 'ruling only where there has been a failure to do equity.'" *McDermott*, 827 N.W.2d at 676 (citation omitted). The district court's award of attorney fees is reviewed for abuse of discretion. *In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006).

## III.

## A.

We first address the issue of the physical care arrangement. In determining physical care, the court is guided by two principles. First, "[t]he objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). Second, it is generally in the best interests of the children to have maximum continuing physical and emotional contact with both parents. Iowa Code § 598.41(1)(a) (2015). Iowa Code section 598.41(5)(a) provides the court may award joint physical care at the

request of either parent and if it does not award joint physical care, "the determination shall be accompanied by specific findings of fact and conclusions of law that the awarding of joint physical care is not in the best interest of the child." Iowa Code § 598.41(5)(a).

In making the determination whether joint physical care is appropriate, the *Hansen* court identified four non-exclusive factors to consider. *See Hansen*, 733 N.W.2d at 696. The first *Hansen* factor, approximation, addresses the "historic patterns of caregiving." *Id.* at 697. "[W]e believe that joint physical care is most likely to be in the best interest of the child where both parents have historically contributed to physical care in roughly the same proportion." *Id.* at 697–98. The second factor is the ability of the parents to communicate and show mutual respect. A lack of trust or a history of controlling or abusive behavior can be a significant barrier to co-parenting. *Id.* at 698. Third, the degree of conflict between the parents is a relevant consideration. *Id.* "Where the parties' marriage is stormy and has a history of charge and countercharge, the likelihood that joint physical care will provide a workable arrangement diminishes." *Id.* Fourth and finally, "is the degree to which the parents are in general agreement about their approach to daily matters." *Id.* at 699. In addition to these considerations, the court must evaluate the unique circumstances of each case. *Id.*

If the court determines joint physical care is inappropriate, the court must choose which caregiver is best suited for primary care. *Id.* at 700 (citing Iowa Code § 598.41(1)(a), (5)). The court considers which parent would support the other's relationship with the child as well as continuity, stability, and approximation. *Id.* A list of other consideration factors includes the needs of the child, safety,

geographic proximity, and the child's wishes, among others. *See* Iowa Code § 598.41(3); *In re Marriage of Winter*, 223 N.W.2d 165, 166 (Iowa 1974).

We discuss each of the relevant factors. The approximation factor favors Jessica, although not as strongly as she suggests. The record reflects Kyle's parents provided a significant amount of care for the parties' children for the great majority of the parties' marriage, including preparing and hosting dinner for the family most nights. This was because both parents were employed full-time and spent a great deal of time commuting to and from work. While the testimony did support a finding that Jessica provided more care for the children when the parties were home, Kyle was not an absent father. In addition, since their separation, the parties have exercised joint physical care of the children without any significant issue relating to the care arrangement.

The other *Hansen* factors support an award of joint physical care. Jessica and Kyle are able to communicate and show respect for each other. From August 2015 to February 2016, Kyle and Jessica continued to reside in the martial home with this dissolution action pending. The parents communicate now by text, email, and a smartphone application for divorced parents to coordinate the children's activities, schedules, and needs. The record shows little in the way of conflict between the parties. Jessica testified she and Kyle had "small arguments here and there." Since the separation, the parties have been mostly cooperative, especially in regards to the welfare of their children. To the extent the parties do have disputes, the disputes tended to concern financial matters associated with the dissolution proceeding. We expect these disputes to dissipate post-dissolution. Finally, the parties are in general agreement about the approach for

handling daily matters. Jessica testified she and Kyle generally agree regarding the children's activities, educational needs, healthcare, and overall parenting styles. Kyle agreed with Jessica's sentiments.

Both Kyle and Jessica are loving and capable parents. They both have strong bonds with their children and have been active participants in their children's lives. Kyle and Jessica have a history of appropriate communication and general agreement on parenting matters. There is no evidence a joint physical care arrangement is detrimental to the children. We affirm the district court's award of joint physical care.

B.

We next address the issue of spousal support. Spousal support is not awarded as a matter of right. *See In re Marriage of Becker*, 756 N.W.2d 822, 825 (Iowa 2008). Instead, it is in the discretion of the district court to award spousal support as needed based on the particular circumstances of each case. *See In re Marriage of Gust*, 858 N.W.2d 402, 408 (Iowa 2015). The factors relevant to the determination are set forth at Iowa Code section 598.21A. The court must consider all of the factors in relation to one another when making an award. *See id.* "Our cases applying the statute have identified three kinds of support: traditional, rehabilitative, and reimbursement." *Id.* However, the categories may overlap in some cases. *See id.*

In this case, the district court awarded Jessica rehabilitative spousal support in the amount of $2000 per month for twenty-four months. "Rehabilitative spousal support is 'a way of supporting an economically dependent spouse through a limited period of re-education or retraining following divorce, thereby creating

incentive and opportunity for that spouse to become self-supporting.'" *Becker*, 756 N.W.2d at 826 (citation omitted). Since the goal of rehabilitative support is self-sufficiency, the award should be of an appropriate duration for the "realistic needs of the economically dependent spouse." *Id.*

On de novo review of the evidence in light of the statutory factors, we affirm the award of spousal support. Jessica received significant assets as a result of the division of the parties' property. The marriage was not of long duration. The parties are both in their late thirties and are in good health. Jessica has an advanced degree and strong employment history. She has been out of the labor force for only a short period of time. While the district court denominated the support here as rehabilitative, Jessica does not need traditional rehabilitative support so much as transitional support while finding suitable employment. *See In re Marriage of Lee*, No. 10–0948, 2011 WL 227573, at *6–7 (Iowa Ct. App. Jan. 20, 2011) (affirming two-year award alimony where wife had same education level as husband and strong employment history but there was disparity between the parties' income). Rehabilitative alimony in the amount of $2000 a month for twenty-four months is equitable under the circumstances presented.

## C.

Jessica challenges the district court's award of attorney fees. The district court ordered Kyle to pay $5000 in attorney's fees. Jessica argues Kyle should have to pay a greater proportion of her attorney fees.

Trial courts have considerable discretion in awarding attorney fees. *In re Marriage of Rosenfeld*, 668 N.W.2d 840, 849 (Iowa 2003). A trial court's award of attorney fees is reviewed under an abuse of discretion standard. *Sullins*, 715

N.W.2d at 247. "Whether attorney fees should be awarded depends on the respective abilities of the parties to pay." *Id.* at 255 (quoting *In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994)). "In addition, the fees must be fair and reasonable." *Guyer,* 522 N.W.2d at 822.

Jessica has not identified any abuse of discretion. The district court based its award on the disparity in income between the parties and Kyle's ability to pay in light of his expenses. The district court also assessed court costs and the fees of the custody evaluator against Kyle, which was approximately $4000. Based on these facts, there is no evidence to conclude the trial court abused its discretion. This court declines to disturb the trial court's award of $5000 in attorney fees to Jessica.

### D.

Both parties seek appellate attorney fees. "An award of appellate attorney fees is not a matter of right but rests within our discretion." *In re Marriage of Kurtt*, 561 N.W.2d 385, 389 (Iowa Ct. App. 1997) (citing *In re Marriage of Scheppele*, 524 N.W.2d 678, 680 (Iowa Ct. App. 1994)). "[W]e consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request is obligated to defend the trial court's decision on appeal." *In re Marriage of Gaer*, 476 N.W.2d 324, 330 (Iowa 1991). Taking these factors into consideration, we decline to award Jessica appellate attorney fees.

### IV.

For these reasons, we affirm the judgment of the district court in all respects. **AFFIRMED.**