**IN THE COURT OF APPEALS OF IOWA**

No. 17-0188
Filed January 10, 2018

**IN RE THE MARRIAGE OF DIANA VASQUEZ FIRESTONE
AND DIEGO FIRESTONE**

**Upon the Petition of
DIANA VASQUEZ FIRESTONE,**
        Petitioner-Appellee,

**And Concerning
DIEGO FIRESTONE,**
        Respondent-Appellant.

_____


        Appeal from the Iowa District Court for Marshall County, Michael J. Moon,

Judge.


        Diego Firestone appeals, and Diana Vasquez Firestone cross-appeals,

from the decree dissolving their marriage.  **AFFIRMED AS MODIFIED ON BOTH**

**APPEALS.**


        Barry S. Kaplan and C. Aron Vaughn of Kaplan & Frese, L.L.P.,

Marshalltown, for appellant.

        Joel T.S. Greer of Cartwright, Druker & Ryden, Marshalltown, for appellee.


        Considered by Vaitheswaran, P.J., Potterfield, J., and Carr, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2018).

**CARR, Senior Judge.**

Diego Firestone appeals from the decree dissolving his marriage to Diana Vasquez Firestone, challenging the property distribution ordered by the district court as inequitable. Diana cross-appeals, requesting reimbursement spousal support, attorney fees, and restoration of her former surname. We affirm, as modified, on both appeals.

## I.    *Background Facts and Proceedings*

Diego and Diana divorced in 2017 after four years of marriage. They each have children from prior relationships. At the beginning of the marriage, Diego lived in Marshalltown and Diana lived in Texas. Diana and her daughters moved to Marshalltown in June 2013. Diana rented a home from Diego's mother so she could improve her credit rating to qualify for a mortgage loan on a home.[1] Diego and his three sons lived nearby in a house he was renting. In December 2015, they purchased a home and moved there together with their children. The arrangement was short-lived; in April 2016, Diana and her daughters moved from the home and into an apartment. She filed a petition for dissolution of marriage the next month.

The primary issue at trial was who would receive the marital home.[2] Diego believed he should receive the home because he had provided the down payment (approximately $7400), he had made the monthly mortgage payments (approximately $1270) after Diana moved out, and his sons "love it there." Diego

---

[1] The parties agreed Diana had the better credit rating, although neither's was very good.
[2] The parties had signed a prenuptial agreement setting forth their intention and agreement to maintain their separate estates in the event of dissolution.

acknowledged he was unable to refinance the house in his name. Diana expressed concern about having the house in his name and how that could affect her credit rating. Diana wanted to move back into the house so she could "stage it" and put in on the market to sell. According to Diana, the house was "immaculate" when they moved in, but it had become a "mess" since she moved out. The parties agreed there would be no profit when the house sold after the realtor and other fees were paid.

After trial, the district court entered a decree dissolving the marriage. Among other provisions, the court ordered Diana to receive the marital house and take over its payment. The court declined to order spousal support. Diego appeals, and Diana cross-appeals. Additional facts will be set forth as relevant to the issues presented by the parties.

## II. Standard of Review

In this equity action involving the dissolution of a marriage, we engage in de novo review. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). Our review involves examining the entire record and adjudicating anew the issue of the property distribution. *Id.* We give weight to the district court's factual findings, though they are not binding on us. *Id.* We defer to the district court's opinion regarding the believability of the parties because of the trial judge's superior ability to gauge their demeanor. *In re Marriage of Pundt*, 547 N.W.2d 243, 245 (Iowa Ct. App. 1996).

## III. Property Distribution

Iowa courts strive to divide marital property equitably between divorcing spouses based on the factors set out in Iowa Code section 598.21(5) (2016). But

an equitable division is not necessarily an equal division. *In re Marriage of Hansen*, 733 N.W.2d 683, 702 (Iowa 2007). The factors relevant to this case include the length of the marriage; the property brought into the marriage; the contribution of each party to the marriage, giving appropriate economic value to each party's contribution and homemaking; the earning capacity of each party; and other economic circumstances of each party. *See* Iowa Code § 598.21(5). "What constitutes a just and equitable award depends on the particular circumstances of each case, after consideration of all the recognized criteria." *In re Marriage of Siglin*, 555 N.W.2d 846, 849 (Iowa Ct. App. 1996).

Diego contends the court's award of the marital home to Diana is inequitable in this case in light of his contribution of $7400 for the down payment, his monthly payments toward the mortgage after Diana moved out, his payment of $1500 toward one of Diana's debts to assist her in rehabilitating her credit in order to buy the home,[3] and the fact that Diana took approximately $11,500 cash from his sock drawer when she moved out.[4] Diego acknowledges he is unable to refinance the home in his name and Diana would have to remain on the mortgage if the house was awarded to him. He expressed his understanding of Diana's concern about her credit rating and having the house in her name going forward. He proposes the court hold $2500 of the money Diana took "in trust to assure timely payment on the mortgage." That is not a feasible option in this case.

---

[3] Diana testified Diego paid $1500 toward one of her debts, and she paid $7000. Diego testified he "think[s]" he "actually [paid] $1800."

[4] Diego testified "it was more than that," "[i]t was close to 17 grand in there," but he acknowledged he "ha[d] no proof" Diana took more than "eleven five or twelve." We adopt the district court's finding that Diana took $11,500 from Diego when she moved out, and that she "intended to use the money to meet unpaid house obligations."

According to Diego, "The disputed real estate has no value and any prospective sale of the property would likely result in a loss to the parties."[5] At trial, he testified the house had negative equity. The district court noted Diana's fear "that if Diego and his sons are allowed to continue living there, the home would never be kept up and would indeed decrease in value," and the court found, "Her concerns in that regard are supported by the record." Although Diego stated he would try to refinance the home going forward, there is no indication he would be able to do so anytime in the near future.

We affirm the court's decision to award Diana the marital home under these circumstances. With little, if any, equity in the home, its award to Diana is a practical disposition. An award to Diego invites potential future problems of default, imposition of complicating tax liens, and resulting discord and need for court intervention. To achieve equity between the parties, we modify the amount of the lump sum payment from Diana to Diego ordered by the court. The court ordered Diana to pay $4000. We modify the decree to order Diana to pay $7500.[6] We believe this modification more accurately compensates Diego for the amount Diana took when she moved out. We credit Diego's testimony that about half of the $11,500 taken was gifted, and the unexpended remainder is rent income, marital in nature. ($11,500 divided by 2 = $5750. $9200 minus $5750 divided by 2 = $1725. These sum to $7475, which we round to $7500.) Our confidence in

---

[5] The parties estimated at trial that $157,000 to $158,000 remained on the mortgage. Local real estate agent Sherri Andrews opined the house would sell for $164,000 to $165,000, and the typical commission for the realtor would be six to seven percent. There are also additional fees involved with a sale of a house these numbers do not account for.
[6] At trial, Diana testified $9200 of the $11,500 she took from Diego remained in her bank account. According to Diana, the difference, $2300, was spent for house-related expenses.

the equity of this disposition is fortified by the down payment money furnished by Diego to purchase the house awarded to Diana. Should she sell the house soon, any equity will be consumed by costs of sale. But she is free to choose.

### IV. Name Change

On cross-appeal, Diana requests the restoration of her name prior to the parties' marriage, Diana Vasquez. Diana requested this name change in giving her testimony before the district court. Diego did not resist Diana's request in the trial court or on appeal.

Iowa Code section 598.37 authorizes a dissolution court to change a person's name to either the name appearing on the person's birth certificate or the name the person had immediately before the marriage. Iowa Code § 598.37; *Erickson*, 553 N.W.2d 905, 908 (Iowa Ct. App. 1996). We modify the decree to order restoration of Diana's former name. She shall be known as "Diana Vasquez."

### V. Spousal Support

Diana challenges the court's denial of her request for an award of reimbursement spousal support. Spousal support is a stipend to a spouse in lieu of the other spouse's legal obligation for support. *Marriage of Erickson*, 553 N.W.2d at 907. The payment of spousal support is not an absolute right; rather, whether a court awards it depends on the particular circumstances of each case. *In re Marriage of Becker*, 756 N.W.2d 822, 825 (Iowa 2008). "Reimbursement spousal support allows the spouse receiving the support to share in the other spouse's future earnings in exchange for the receiving spouse's contributions to the source of that income." *Id*. at 826.

Diana requested reimbursement support "to reimburse me for uprooting myself, my entire family here. That is to rebuild and sustain myself here. It's just me and my two daughters. We do not have a support system here." Diego countered, "We've only lived together for three months," and, "She makes more money than I do" and is "capable" of supporting herself. The district court denied Diana's request, stating:

> Diana has requested reimbursement alimony to pay her for sums expended to move to Marshalltown. When asked what amount she was requesting, she stated that she would leave it up to the court to determine a reasonable amount. Absent some indication of what expenses she incurred in moving her household from Texas to Iowa, the court is without the ability to award her any alimony. That having been said, the court need not address whether she would be entitled to reimbursement alimony in the first instance.

In light of the property distribution and the duration of the marriage, as well as consideration of the other relevant factors, an award of spousal support is not warranted in this case. *See, e.g.*, *id.* (considering property division and alimony together in evaluating their individual sufficiency). There was no evidence Diana did anything to enhance Diego's future earning capacity.

## VI. Attorney Fees

Diana challenges the district court's denial of her request for trial attorney fees. An award of trial attorney fees rests in the sound discretion of the trial court and should not be disturbed on appeal in the absence of an abuse of discretion. *In re Marriage of Romanelli*, 570 N.W.2d 761, 765 (Iowa 1997). Whether attorney fees should be awarded depends on the parties' respective abilities to pay, *see In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006), and fees awarded must be fair and reasonable, *see In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa

1994). Here, we find the district court exercised its discretion in denying Diana's request for Diego to pay her attorney fees. We affirm on this issue.

## VII. *Appellate Attorney Fees*

Diana also requests appellate attorney fees. An award of attorney fees is not a matter of right and rests within our discretion. *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). We determine whether an award is appropriate considering the needs of the party seeking the award, the other party's ability to pay, and whether the appeal required a party to defend the district court's decision. *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). In light of these factors, we decline Diana's request for appellate attorney fees.

## VIII. *Conclusion*

Upon our review of the issues raised on appeal, we affirm the dissolution decree entered by the district court and modify the decree to (1) order Diana to make an equalization payment to Diego in the amount of $7500 rather than $4000 and (2) provide for the restoration of Diana's name to Diana Vasquez. We decline to award appellate attorney fees. Costs on appeal are assessed equally to the parties.

**AFFIRMED AS MODIFIED ON BOTH APPEALS.**