**IN THE COURT OF APPEALS OF IOWA**

No. 22-1155
Filed June 7, 2023

**IN RE THE MARRIAGE OF YVONNE LYNN TAYLOR
AND TIMOTHY JAMES TAYLOR**

**Upon the Petition of
YVONNE LYNN TAYLOR,**
        Petitioner-Appellee,

**And Concerning
TIMOTHY JAMES TAYLOR,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Dickinson County, Charles Borth,

Judge.


        A husband appeals the spousal support award to his wife in the decree

dissolving their marriage. **AFFIRMED AND REMANDED WITH DIRECTIONS.**


        Ryan D. Babich of Babich Goldman, P.C., Des Moines, for appellant.

        Stephen F. Avery of Cornwall, Avery, Bjornstad & Scott, Spencer, for

appellee.


        Heard by Tabor, P.J., and Schumacher, Badding, Chicchelly, and Buller, JJ.

**BADDING, Judge.**

After a twenty-seven-year marriage, emergency room physician, Timothy ("Tim") Taylor, contests the award of traditional spousal support to his wife, Yvonne Taylor. He claims the award is excessive in both its amount and duration. He also requests that their income tax obligation be split equally between them. Both parties seek appellate attorney fees.

Given the "institutional deference afforded the district court" on our de novo review of the record, *see In re Marriage of Sokol*, 985 N.W.2d 177, 183 (Iowa 2023), we affirm the court's award of spousal support and do not disturb the income tax obligation. We grant Yvonne's request for appellate attorney fees but remand for a determination of how much she should be awarded.

## I.    Background Facts and Proceedings

Yvonne and Tim met in the summer of 1990 in Portland, Maine. Yvonne had just graduated from college with a dual major in business administration and English literature. She was working as a waitress at a restaurant and a first mate for a yacht company while she waited to start as a head crew coach for a nearby college. Tim was working toward a doctorate of osteopathy, which he completed in 1991.

The couple got engaged two years after they met and moved to Arkansas for Tim's Air Force tour. While there, Yvonne worked as an accountant. They married in 1994 and moved to Spirit Lake, Iowa, where Tim began practicing medicine with a family practice clinic, and Yvonne kept working in accounting.

A few years later, dissatisfied with her job as an accountant, Yvonne decided to start a seasonal recreational outfitter business that provided wetland

kayak and river tours, sculling lessons, and retail boat sales.  The couple's first child was born in 2000.  The next year, after their second child was born, Yvonne closed the business.  She testified: "Tim was not excited about me spending time in my business.  He didn't really support what it was taking, and he just wanted me to be home with the kids.  He decided it was more important."  But she continued to rent some equipment and run tours through word-of-mouth referrals.  She also coached local soccer teams until 2008.  During that time, the couple's third child was born.

After closing the outfitter business, Yvonne stayed at home with the children while Tim continued to work at the family practice clinic until 2013, when he became overwhelmed with the patient load.  He left the clinic for a job as an emergency room physician at a local hospital, but in 2015, he was asked to resign over unspecified "difficulties."  Tim then took some time off "to be on sleeping medications and get into counseling."

To help the family stay afloat, Yvonne worked for a tax preparation business for one tax season.  She was offered a management position but decided to do taxes out of her home.  After about a year of doing that, Yvonne worked for a law firm doing their estate taxes and earned $24.00 per hour.  She decided to not return to that job the next tax season because of the "hours and the time."  Yvonne explained: "I really wanted the flexibility to be with [the youngest child] . . . .  She didn't drive yet, you know.  So I realized working for myself was the most advantageous because I would make more money in less time working for myself."  So in 2017, she opened YT Financial Services, where she mainly does taxes, with some payroll and bookkeeping.  On average, she works between ten and fifteen

hours per week, grossing $17,213.50 in 2021. Yvonne testified that once their youngest child goes to college, she intends to "find something fulfilling" for herself outside of tax preparation.

While Yvonne was easing back into the workforce, Tim secured a position with a medical contract staff agency. He was placed at a critical access emergency room for a hospital in Storm Lake, and then he picked up a staff position in the emergency room for a hospital in Cherokee. Tim was contracted to work ninety-four hours per month at $150.00 per hour for the hospital in Storm Lake and ninety-six hours per month at $180.00 per hour for the hospital in Cherokee. But during the COVID-19 pandemic, which Tim described as "some of the toughest years of [his] life," he worked overtime, putting in "a minimum of 60 hours a week, if not more." Tim also took on a consulting position for a cosmetics company in 2019, which paid him $1000.00 per month. Altogether, his gross annual income was $328,470.00 in 2019, $437,008.00 in 2020, and $467,466.00 in 2021.[1]

In 2022, Tim reduced his contract hours to seventy-four per month at each hospital. Tim testified that he could feel himself getting burnt out again, pointing to struggles with sleeping and concentrating. He sought help from his physician, so that he could hopefully continue working until sixty-three years old when he said that he could begin drawing retirement. Before their marriage troubles, which began in earnest during the pandemic, Tim testified that he and Yvonne had agreed that he would retire at age fifty-five because Tim's father "started showing . . . memory problems in his late 50s, early 60s." To help achieve that goal, Tim

---

[1] These amounts included between $20,000.00 to $23,000.00 each year for employer-paid health insurance.

said he and Yvonne lived frugally, buying only two new vehicles during their marriage and taking few vacations together.

The couple fell short of their goal, with Yvonne petitioning to dissolve their marriage in October 2021. Trial was held in April 2022, when Yvonne was fifty-five years old, and Tim was fifty-eight. Their youngest child—the only one who was still a minor—was sixteen and a sophomore in high school. In its June decree, the district court placed the child in Yvonne's physical care and ordered Tim to pay $1034.00 per month in child support[2] based on a gross annual income of $17,213.00 for Yvonne and $297,120.00 for Tim.[3] Yvonne was awarded $1,041,067.00 in property, while Tim was awarded $1,105,669.00. She was also awarded one-half of Tim's Avera annuity, which would begin paying a total monthly benefit of $5166.00 in December 2028. To equalize the division, the court ordered Tim to pay Yvonne $32,301.00 within ninety days of the decree. The court also ordered Tim to pay Yvonne $7000.00 per month in spousal support "until either party dies or Yvonne remarries, whichever occurs first. This amount shall be reduced to $4,417 once Yvonne begins receiving her ½ share of the Avera annuity in the anticipated amount of $2,538 per month."

Tim filed a motion to reconsider, enlarge, or amend the decree that sought, among other things, an order requiring the parties to be equally responsible for their 2021 income tax debt. Noting that issue had not been identified as contested before trial, the court denied Tim's motion. In doing so, the court found "based

---

[2] Neither child custody nor child support is at issue in this appeal.
[3] The court calculated this amount based on Tim's reduced contract hours plus his consulting income for the cosmetics business.

upon Yvonne's annual income, she does not have the ability to pay a tax burden created by Tim's substantial income."

Tim appeals, challenging the amount and duration of the spousal support awarded to Yvonne, requesting that both parties be ordered to pay the income tax debt for 2021, and seeking $9425.00 in appellate attorney fees. Yvonne also requests appellate attorney fees but in an unspecified amount.

## II. Analysis

### A. Spousal Support

We review dissolution proceedings de novo. *In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016). But, as recently explained by the supreme court in *Sokol*, despite that de novo review,

> we afford deference to the district court for institutional and pragmatic reasons. The institutional deference afforded the district court in determining spousal support counsels against undue tinkering with spousal support awards. An appellate court should disturb the district court's determination of spousal support only when there has been a failure to do equity. Otherwise, when appellate courts unduly refine these important, but often conjectural, judgment calls, they thereby foster appeals in hosts of cases, at staggering expense to the parties wholly disproportionate to any benefit they might hope to realize.

985 N.W.2d at 182–83 (cleaned up).

With that standard in mind, we turn to Tim's challenge to the amount and duration of Yvonne's spousal support award. He contends it should be modified to a transitional award of $5000.00 per month to terminate upon the parties' youngest child graduating from high school, which he says will "permit Yvonne over two years to financially transition from being married to being divorced." If we find that an award of traditional spousal support is more appropriate, Tim

alternatively argues his obligation "should still terminate upon Yvonne receiving her one-half share of [his] Avera annuity."

Spousal support "is an allowance to the spouse in lieu of the legal obligation for support." *In re Marriage of Mills*, 983 N.W.2d 61, 67 (Iowa 2022). It is not an absolute right but is instead "determined based on the particular circumstances presented in each case." *Id.* In considering those circumstances, we are guided by the factors set out in Iowa Code section 598.21A(1) (2021). Through the application of "the statutory criteria, our precedents have recognized four forms of spousal support deemed equitable: traditional, reimbursement, rehabilitative, and transitional." *Sokol*, 985 N.W.2d at 185. "The amount and duration of a spousal support award should be tailored to achieve the underlying equitable purpose of the spousal support award." *Id.* Here, the district court found an award of traditional spousal support was equitable. We agree.

"An award of traditional spousal support is equitable in marriages of long duration to allow the recipient spouse to maintain the lifestyle to which he or she became accustomed." *Id.*; *accord* Iowa Code § 598.21A(1)(a). Traditional spousal support "is usually payable for life or for so long as the dependent is incapable of self-support." *Mills*, 983 N.W.2d at 68 (citation omitted). "Generally, only 'marriages lasting twenty or more years commonly cross the durational threshold and merit serious consideration for traditional spousal support.'" *Sokol*, 985 N.W.2d at 185 (citation omitted).

Tim recognizes the parties' twenty-seven-year marriage leans in favor of a traditional spousal support award. But he argues the other statutory factors do not, starting with the parties' "physical and emotional health." *See* Iowa Code

§ 598.21A(1)(b). Tim contends that while Yvonne is in overall good health, his "emotional health suffered throughout the parties' marriage from extraordinary work pressures," which he says led to him leaving his family practice clinic in 2013 and losing his job at a hospital in 2015. But Tim testified that he was taking preventive steps to avoid another burn-out, like reducing his work hours and consulting a physician. So we do not give this factor much weight. *See In re Marriage of Lynch*, No. 17-2067, 2019 WL 319844, at *6 (Iowa Ct. App. Jan. 23, 2019) (giving little weight to spouse's situational depression in spousal support analysis).

Tim next argues that "Yvonne was awarded substantially more liquid assets . . . due to the fact [she] was awarded $781,279 of retirement assets while Tim was awarded $876,864 of retirement assets," which resulted in Yvonne getting "more of the bank accounts and receiving a cash property settlement." *See* Iowa Code § 598.21A(1)(c). But, as Tim's argument recognizes, the bulk of the assets Yvonne was awarded were tied up in retirement accounts. She only received about $10,000.00 more than Tim from the division of their bank accounts, plus the $32,301.00 cash equalization payment he was ordered to pay her. This is not a case in which the spousal support recipient was awarded sufficient "liquid assets to meet [her] immediate needs" "in transitioning to single life." *See Sokol*, 985 N.W.2d at 186 ("Where the requesting spouse has sufficient income or liquid assets to meet these immediate needs, transitional spousal support is inappropriate."); *cf. In re Marriage of Becker*, 756 N.W.2d 822, 856 (Iowa 2008) (considering the "substantial income" spousal support payee could earn from a $3.3 million dollar property settlement in assessing her need for spousal support).

Much of Tim's focus is on Yvonne's education, earning capacity, and work history. *See* Iowa Code § 598.21A(1)(d), (e). He argues that she is "well educated, has the employment history, has the appropriate employment skills, and has the work experience to work full-time if she chooses to do," which he says could lead to an income of at least $50,000.00 per year.[4] But Tim presented no evidence, beyond his own speculation, to support that estimate of Yvonne's earning capacity. *See In re Marriage of Schriner*, 695 N.W.2d 493, 501 (Iowa 2005) (affirming spousal support award where "there was no evidence in this case that [wife]'s earnings were not commensurate with her earning capacity"). Yvonne stayed home with the children for most of the parties' marriage. When she did work, it was at part-time jobs. The most that she grossed in the five years before the dissolution trial was $18,358.00 in 2019. In contrast, Tim grossed $328,470.74 that same year. So while Yvonne is the "very bright" and "very capable" person that Tim described, her earning capacity will never come close to his even if she returns to work full-time.

This leaves us with the "feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal." Iowa Code § 598.21A(1)(f). Tim argues that because "the parties lived

---

[4] Tim reached this amount based on full-time employment at the hourly rate that Yvonne earned when she worked for the law firm doing estate taxes. He also contends that if she increased her hours at YT Financial Services, she could earn that much, pointing out that "[s]ince Yvonne made $17,213.50 in 2021 while working 10-15 hours per week, her income working full-time would be approximately $50,000 per year ($17,213.50 x 3 = $51,640.50)."

frugally throughout their marriage," she does not need $7000.00 per month in spousal support. But, as the district court found,

> [w]hile the parties have not lived an extravagant lifestyle, they have certainly maintained very comfortable finances. Yvonne testified that she generally avoided buying more expensive clothing for herself to avoid the ire of Tim. They have acquired and own three separate parcels of real estate. They own an interest in an airplane. While they have not vacationed together for several years, Yvonne has travelled, including relatively recent trips to New York, Georgia, and Florida . . . . They have acquired assets in excess of $2,000,000.

With a gross annual salary of $17,213.50, Yvonne "cannot support herself at a standard of living comparable to the lifestyle she enjoyed while married." *In re Marriage of Pazhoor*, 971 N.W.2d 530, 542 (Iowa 2022).

Considering all the factors, including the recent changes in tax law that make spousal support more burdensome for the payor and more favorable for the payee, *see In re Marriage of Mann*, 943 N.W.2d 15, 21 (Iowa 2020), we find the court's traditional spousal support award was equitable in its amount and duration. Should circumstances change in the future—either because of the specter of dementia that Tim raises due to his father's Alzheimer's diagnosis or his reduced income at retirement, Tim can seek a modification then. *See In re Marriage of Gust*, 858 N.W.2d 402, 418 (Iowa 2015) ("[U]nless all of the factors in Iowa Code section 598.21C(1) can be presently assessed, future retirement is a question that can be raised only in a modification action subsequent to the initial spousal support order.").

## B. Income Tax Debt

Tim next claims that the district court erred in not dividing the parties' 2021 income tax obligation equally between him and Yvonne. Bypassing any waiver or

error-preservation concerns, *see State v. Taylor*, 596 N.W.2d 55, 56 (Iowa 1999), we agree with the court that "based upon Yvonne's annual income, she does not have the ability to pay a tax burden created by Tim's substantial income." We accordingly reject this assignment of error.

## III. Appellate Attorney Fees

Both parties request an award of appellate attorney fees. These fees are "awarded upon our discretion and are not a matter of right." *In re Marriage of Heiar*, 954 N.W.2d 464, 473 (Iowa Ct. App. 2020). "When considering whether to exercise our discretion, we consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* (cleaned up). Given the substantial difference in the parties' incomes and the outcome of the appeal, we find Yvonne should be awarded appellate attorney fees. But because she did not submit any documentation supporting her request, we remand the issue of appellate attorney fees to the district court to determine a reasonable award. *See id.* at 473–74.

**AFFIRMED AND REMANDED WITH DIRECTIONS.**