# IN THE COURT OF APPEALS OF IOWA

No. 18-0884
Filed March 6, 2019

IN RE THE MARRIAGE OF HEATHER M. MONAT
AND BENJAMIN LEE MONAT

Upon the Petition of
HEATHER M. MONAT,
        Petitioner-Appellee,

And Concerning
BENJAMIN LEE MONAT,
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Black Hawk County, Linda M.

Fangman, Judge.


        Benjamin Monat appeals from the decree dissolving his marriage to Heather

Monat.  **AFFIRMED AS MODIFIED.**


        Heather A. Prendergast of Roberts, Stevens & Pendergast, PLLC,

Waterloo, for appellant.

        Danni J. Harris of Hope Law Firm, PLC, West Des Moines, for appellee.


        Considered by Vogel, C.J., and Vaitheswaran and McDonald, JJ.

**McDONALD, Judge.**

This case arises out of the dissolution of the marriage of Heather and Benjamin (Ben) Monat. In this appeal, Ben challenges the district court's award of physical care of the children to Heather, the division of the parties' property, and the award of spousal support to Heather. Heather requests an award of appellate attorney fees.

I.

The record reflects the following. The parties married in December 2007. Prior to the marriage, but after the parties' engagement, Ben purchased a house from his grandmother outside Independence, Iowa. Ben and Heather lived in the house after the marriage and improved it over time.

At the time of the marriage, Heather had just completed her undergraduate studies and began graduate school, studying speech pathology. Ben worked for John Deere. Eventually Ben completed a bachelor's degree and MBA paid for by John Deere.

The couple's first years of marriage were marked by moments of contention. Heather wanted to live in Cedar Falls rather than the Independence area. The couple disagreed about where Heather should complete her practical experience requirements for her graduate program. On one occasion, after a sharp disagreement regarding the issue, Heather tried to drive away from the home. Ben stopped her. He later characterized his efforts as protective. He stated he carefully rotated Heather's legs around and out of the car as she sat in the driver's seat. He stated he then stood her up so he could embrace her to calm her down as he would a child. Heather remembers the event differently. She recalled Ben angrily and

forcefully pulled her out of her car as she tried to hold onto her steering wheel. Following this event, the parties' parents became involved. Heather's mother encouraged her to make the relationship work. Because Heather did not believe in divorce, she returned to the marital home.

Two children were born into the marriage: G.M. in 2013 and I.M. in 2014. At the time of G.M.'s birth, Heather worked full-time as a speech pathologist. However, the parties mutually agreed she should reduce her work schedule following G.M.'s birth. Around the same time, the couple moved to Cedar Falls at Heather's urging; they used the proceeds from the sale of their first home to purchase their Cedar Falls home. The parties' relationship did not improve following the move. Heather kept a personal bag stored at a neighbor's house should she need to flee the home. Heather provided most of the care for G.M., and Ben continued to excel at work. Following I.M.'s birth, Heather further reduced her work schedule at the parties' mutual agreement. They intended Heather would work only part-time until the children entered elementary school. When Heather worked, the children attended daycare.

G.M. began having problems with peer interaction at daycare. Heather became concerned G.M. was mirroring Ben's behavior. Ben often became frustrated with G.M. and would yell at him when he did not immediately comply with instructions. As a result, Heather sought play therapy for G.M. with Ben's approval. The play therapist diagnosed G.M. with an adjustment disorder with anxiety. The therapist also met with Heather and Ben. Through therapy, Ben became aware that G.M. was more attached to Heather because G.M. was fearful of him. Ben admitted he yelled at G.M. too much and became frustrated easily

with him. Ben worked toward developing new parenting techniques to improve his relationship with G.M. The therapist's notes indicate Ben made significant progress and his relationship with G.M. improved.

The record reflects an alleged incident of child abuse against Ben. In March 2017, Ben was bathing G.M. one evening. Heather remembers that G.M. splashed around, but she also remembers G.M. crying out that Ben hurt and pinched him. The following morning, Heather observed several bruises on G.M.'s leg. Heather photographed the bruises. She packed up the children and took them to her parent's home. She and her mother took G.M. to his doctor's office so that G.M.'s leg could be examined. Heather recounted her version of the prior night's events. As a result, the doctor contacted the Iowa Department of Human Services ("IDHS"). Ben stated G.M. splashed around and Ben put his hand up to prevent G.M. from splashing him and directed G.M. to stop splashing. IDHS investigated and confirmed the incident as abuse but declined to place Ben on the Central Abuse Registry. Ben then appealed. Heather sought to intervene in the appeal but was denied. On appeal, IDHS found the incident was not confirmed as abuse and reiterated that Ben would not be placed on the abuse registry.

Heather sought a temporary restraining order against Ben and filed her petition for dissolution. Ben was notified and instructed to leave the marital home. He complied, and the parties mutually agreed to a restraining order that permitted Heather to remain in the home with the children and limited the parties' contact to (1) text or email communication regarding the children, (2) attendance at G.M.'s therapy, (3) attendance at G.M.'s weekly gymnastics class, and (4) bringing the children to the other parent's front door when dropping off the children. The

agreement limited Ben's time with the children to two hours on Monday evenings and four hours on Saturdays.

By June 2017, the district court entered an order on temporary matters in the dissolution proceeding. The court found Ben "has always been a very active participant with the children and their events and has been trusted by [Heather] to care solely for both children while [she] goes on extended vacations without the children and [Ben]." The court then awarded the parties joint physical care of the children. The court permitted Heather to stay in the marital home and required Ben continue to pay the mortgage and other monthly expenses, including groceries, utilities, and gas. The court ordered that Ben provide Heather access to his health spending account to cover the children's medical expenses. It also ordered Ben pay Heather monthly child support.

In late August or early September 2017, Ben and Heather had a joint account to be used for Heather to purchase groceries, but Ben closed the account after Heather used account funds to purchase two tires for her car. She reasoned her use of this account was reasonable because she regularly deposited a mileage reimbursement check from her employer into the account for such expenses. Ben also removed Heather from a Quik Star gas account and removed her from the health spending account. In October, Ben had the home's utilities transferred to Heather's name. As a result, Heather was using income from her part-time job to pay the utilities, the children's out-of-pocket medical expenses, groceries, gas, and other living expenses.

In October, Heather sought out another therapist for G.M. Ben resisted and contacted G.M.'s past therapist for her assistance, detailing his difficulties with

Heather. The new therapist eventually treated G.M. and also diagnosed him with an adjustment disorder with anxiety. The new therapist's notes do not mention any aggressive behavior from Ben directed at G.M.

The dissolution proceeding was tried in January 2018 over three days. During the trial, Ben paid Heather for several months of unpaid child support. Both Heather and Ben testified. Ten other people also provided testimony. They include members of both Heather and Ben's families, their friends, and their former babysitter (a friend of Ben's family). The witnesses provided conflicting testimony about Ben's parenting skills, past involvement with the children, and temperament. All generally agreed Heather is a good mother. The court declined Ben's request for joint physical care of the children and instead granted Heather physical care of the children. It evenly divided the parties' property, ordering Ben to make an equalization payment to Heather. Finally, the court awarded Heather spousal support in the amount of $1000 per month until September 2020 so that she may continue to work part-time until both children are in school as the parties contemplated prior to separation.

## II.

This court reviews dissolution proceedings de novo. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). "Although our review is de novo, we afford deference to the district court for institutional and pragmatic reasons." *Hensch v. Mysak*, 902 N.W.2d 822, 824 (Iowa Ct. App. 2017). We will not modify a dissolution decree unless the district court failed to do equity. *See In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016); *In re Marriage of Graves*, No. 13-1426, 2014 WL 3511879, at *2 (Iowa Ct. App. July 16, 2014).

A.

We first address Ben's challenge to the district court's physical care decision. In making the physical care determination, the court considers what "environment [is] most likely to bring [the children] to health, both physically and mentally, and to social maturity." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). When a parent requests joint physical care and the court refuses to award joint physical care, the court must provide specific justification for its refusal. *See Hensch*, 902 N.W.2d at 825. However, this requirement "does not create a presumption in favor of joint physical care." *Id.* (quoting *In re Marriage of Fennelly*, 737 N.W.2d 97, 101 (Iowa 2007)). When considering whether joint physical care is in the children's best interest, the court considers four factors:

> (1) "approximation"—what has been the historical care giving arrangement for the child between the two parties; (2) the ability of the [parties] to communicate and show mutual respect; (3) the degree of conflict between the parties; and (4) "the degree to which the parents are in general agreement about their approach to daily matters."

*Id.* at 824-25 (quoting *In re Marriage of Berning*, 745 N.W.2d 90, 92 (Iowa Ct. App. 2007)). The court may also consider any other relevant factors. *See In re Marriage of Determan*, No. 10-0732, 2011 WL 444150, at *3 (Iowa Ct. App. Feb. 9, 2011) (describing the four factors as nonexclusive).

On de novo review, we affirm the district court's physical care determination. The parties' historical caregiving practices show the best interest of the children is advanced by awarding Heather physical care of the children and granting Ben liberal visitation. While it is true the temporary order set forth a joint physical care arrangement, that arrangement deviated from the parties' historical care-giving

arrangement. Upon mutual agreement of the parties, Heather reduced her work commitments to care for the children. While Ben worked, Heather primarily focused on the children. Heather took the children to most of their medical appointments. She also arranged for G.M.'s therapy. Heather has served as the family's primary point of contact with the children's daycare provider. The parties' temporary arrangement was relatively short-lived when compared to their past caregiving practices. Approximation thus favors awarding Heather physical care. *See Hansen*, 733 N.W.2d at 696-97.

The remaining *Hansen* factors inveigh against an award of joint physical care. The parties' inability to communicate and show mutual respect weighs against joint physical care. *See id.* at 698. Text messages between the parties show they can communicate on some issues but have difficulty communicating when facing atypical or more significant issues. The level of conflict between Ben and Heather also weighs against joint physical care. *See id.* Heather believes Ben abused her, but Ben disagrees. The abuse, and the parties' disagreement of whether there was in fact any abuse, has created significant conflict and animosity between the parties. Finally, Heather and Ben disagree regarding fundamental parenting issues, which is at odds with a shared physical care arrangement. *See id.* at 699. The therapist's notes specifically state: "Both parents report that they have different views on parenting." This is exemplified in their differing approaches to correcting the children and their views on where the children should attend school.

In addition to the four factors provided in *Hansen*, the court may also consider any other relevant factor. *See Determan*, 2011 WL 444150, at *3. Here,

we find it significant the parties attempted a joint physical care arrangement pursuant to the order on temporary matters, and the arrangement did not work well for the children. The children were often confused and did not know when they were to go with each parent. G.M. began acting aggressively toward his sister, friends, and the family dog. I.M. became upset whenever she was forced to leave her mother or when her mother did something without her.

We affirm the district court's physical care determination.

B.

Ben argues the district court erred in its division of property in several respects. First, he argues the court erroneously considered land he owned prior to the marriage when determining the property distribution. Second, he argues the court erred in failing to offset equity he accrued in the first family home he bought prior to the marriage. Third, he argues the court erred in its division of his annual bonus. Fourth, he argues the court failed to consider the back child support payments Ben made during trial when dividing the property.

"Iowa is an equitable distribution state." *McDermott*, 827 N.W.2d at 678. "Although an equal division is not required, it is generally recognized that equality is often most equitable." *In re Marriage of Rhinehart*, 704 N.W.2d 677, 683 (Iowa 2005). In effort to divide property equitably, the court considers the following factors:

a. The length of the marriage.
b. The property brought to the marriage by each party.
c. The contribution of each party to the marriage, giving appropriate economic value to each party's contribution in homemaking and child care services.
d. The age and physical and emotional health of the parties.

e. The contribution by one party to the education, training, or increased earning power of the other.

f. The earning capacity of each party, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children, and the time and expense necessary to acquire sufficient education or training to enable the party to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage.

. . . .

i. Other economic circumstances of each party . . . .

j. The tax consequences to each party.

. . . .

m. Other factors the court may determine to be relevant in an individual case.

Iowa Code § 598.21(5) (2017).  One party's greater need for assets may warrant a larger property award.  *See Rhinehart*, 704 N.W.2d at 684.

Ben argues the court erred in considering certain premarital property when making the property division.  He argues the court should not have considered his ownership of a parcel of CRP land, which he and his brothers purchased prior to the marriage, when reaching a property-distribution determination.  Ben also argues the district court should have should have set aside the down payment he made for the couple's first home and should have set aside the difference between the home's purchase price and its fair market value prior to dividing the marital property.

We have considered Ben's arguments with respect to both issues, and we decline to modify the property division.  Ben acknowledges premarital property can be considered in the property division in dissolution proceedings.  *See* Iowa Code § 598.21(5)(b).  When considering the factors enumerated in Iowa Code section 598.21(5), it becomes apparent an equal division of the assets, including the premarital property, is equitable here.  While this was not a long marriage, it was

not a short marriage either. Both parties contributed to the family's prosperity. Ben provided a healthy income from his job and Heather brought in income, kept the home, and provided extensive child care. Certainly Heather benefitted from the couple paying off her student-loan debt, but Ben benefitted from Heather's support as he attended undergraduate and graduate school during the marriage. Both are well educated, but Heather's earning capacity is compromised from her absence from the fulltime job market at the parties' mutual agreement. The district court correctly concluded Ben and Heather should exit the marriage with equal assets. The court did equity in placing the parties on equal footing upon exiting the marital relationship. *See Fennelly*, 737 N.W.2d at 102 ("[I]t is generally recognized that equality is often most equitable." (quoting *Rhinehart*, 704 N.W.2d at 683)).

Ben also contends the district court's calculations are in error because the district court failed to make certain offsets related to the division of Ben's annual bonus and related to Ben's payment of past due child support during trial. In reviewing the district court's division of property, we conclude the property division was within the range of evidence and was equitable under the facts presented. We decline to disturb the district court's property division.

For these reasons, we affirm the district court's property division.

C.

We next address Ben's challenge to the spousal support award. The district court awarded Heather spousal support in the amount of $1000 per month until September 2020, when I.M. begins school. The district court did not classify the spousal support award. Ben cites to Heather's equal property award and the fact that she can remain in the marital home until its sale (while Ben pays the mortgage,

insurance, and property tax) as reasons negating the need for spousal support. *See* Iowa Code § 598.21A(1)(c) (stating the court shall consider the distribution of property when awarding spousal support). He notes she is able to work fulltime and currently is not. He also argues Heather does not qualify for any of the recognized forms of spousal support and could support herself if she chose to go back to work fulltime.

Spousal support is not a matter of right. The award of spousal support depends of the circumstances of each case. *See In re Marriage of Gust*, 858 N.W.2d 402, 408 (Iowa 2015). The three commonly accepted forms of spousal support are traditional, rehabilitative, and reimbursement. *See id.* A lesser known form of spousal support is transitional support. *See, e.g.*, *In re Marriage of Hansen*, No. 17-0889, 2018 WL 4922992, at *16 (Iowa Ct. App. Oct. 10, 2018) (McDonald, J., concurring specially); *In re Marriage of Lange*, No. 16-1484, 2017 WL 6033733, at *3 (Iowa Ct. App. Dec. 6, 2017) ("Jessica does not need traditional rehabilitative support so much as transitional support while finding suitable employment.").

None of the generally-recognized forms of spousal support are applicable here. Traditional support is inapplicable here. The marriage here fell well short of the twenty-year durational threshold. See *Gust*, 858 N.W.2d at 410-11. Rehabilitative is also inapplicable because Heather needs no re-education or training to obtain employment; she already has her graduate degree and sufficient work experience to reenter the labor market. *See In re Marriage of Becker*, 756 N.W.2d 822, 826 (Iowa 2008). Reimbursement support does not apply. Although Ben obtained his degrees over the course of the marriage, he did so at no cost and did not recently graduate. *See id.* Transitional support is also inapplicable

here. The district court's award was not intended to assist Heather in overcoming the economic dislocations associated with dissolution of the marriage. Instead, the district court awarded support to allow Heather to continue with the parties' historical care-giving practices until the younger child started school.

Under the circumstances, it was inequitable for the district court to award spousal support.

> We should not be quick to recognize new categories of spousal support. Nor should we be too lax in applying the generally-recognized categories to the facts of a particular case. Among the galaxy of cases, the generally-recognized categories of support are constellations providing guidance in navigating the otherwise uncharted waters of spousal support.

*In re Marriage of Baccam*, No. 17-1252, 2018 WL 5850224, at *10 (Iowa Ct. App. Nov. 7, 2018) (McDonald, J., concurring in part and dissenting in part).

> [I]f one spouse has a financial need, the next question should not be whether the other spouse has the ability to pay. Instead, the next question should be whether the facts and circumstances of the case are such that it would be equitable to require the other spouse to satisfy the need. The answer to that question is derived from looking at the constellation of principles embodied in the traditionally-recognized forms of spousal support. Only if one or more of the generally-recognized categories is applicable, i.e., only if it would be equitable to require spousal support, should we ask the question of whether the other spouse has the ability to satisfy the recipient spouse's need.
> Here, there are no generally-recognized categories of spousal support applicable to the case at hand. There are no extraordinary circumstances justifying the departure from the traditional categories of spousal support. It is not equitable to force one spouse to subsidize a former spouse merely because he or she can. This is particularly true where, as here, the recipient spouse is voluntarily underemployed.

*Id.* It does not matter that the parties' mutually agreed upon Heather's intentional withdrawal from the workforce while the parties were married. The marital

relationship has now been dissolved, and the parties are required to adjust accordingly.

Accordingly, we strike that portion of the dissolution decree awarding Heather spousal support. Ben shall receive credit against the property award for any amounts of spousal support already paid. *See, e.g., In re Marriage of Jondle*, No. 10-1892, 2011 WL 4579192, at *5 (Iowa Ct. App. Oct. 5, 2011) ("There is no support for awarding Regina additional alimony, and the alimony award is stricken. Ronald is given credit against the property award for any amounts paid as alimony under the district court's decree.").

## D.

Heather requests appellate attorney fees. Appellate attorney fees are awarded upon the court's discretion and are not a matter of right. *See In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). When considering whether to exercise discretion, the court considers "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *McDermott*, 827 N.W.2d at 687 (quoting *Okland*, 699 N.W.2d at 270). We decline to award Heather appellate attorney fees.

## III.

For the foregoing reasons we affirm the decree as modified. We affirm the dissolution of the parties' marriage, the award of physical care of the children to Heather, and the district court's division of the parties' property. We strike that portion of the decree awarding Heather spousal support.

**AFFIRMED AS MODIFIED.**

Vogel, C.J., concurs; Vaitheswaran, J., dissents.

**VAITHESWARAN, Judge** (dissenting)

I respectfully dissent from the portion of the majority opinion striking the spousal support award of $1000 per month beginning the first day of the month following the sale of the home and continuing through September 1, 2020. I believe the limited spousal support award is justified on the basis of the disparity in earnings, the parents' decision to have Heather spend less time in the workforce while the children were under school age, and Heather's need for time to reestablish her earning capacity. *See In re Marriage of Becker*, 756 N.W.2d 822, 827 (Iowa 2008). While the award may not fit neatly into one of the established spousal-support categories, the Iowa Supreme Court has not rested on labels. *See id.* ("Factually, the support award may be a combination of" two kinds of support.). I believe the district court acted equitably in awarding Heather spousal support, and I would affirm that portion as well as all other parts of the thorough decision.