# IN THE COURT OF APPEALS OF IOWA

No. 18-2157
Filed August 7, 2019

IN RE THE MARRIAGE OF JESSIE KATE CARTER
AND JARED LeGRAND CARTER

Upon the Petition of
**JESSIE KATE CARTER,**
         Petitioner-Appellant,

**And Concerning**
**JARED LeGRAND CARTER,**
         Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Union County, Dustria A. Relph,

Judge.


        Jessie Carter appeals the district court's decree dissolving her marriage to

Jared Carter.  **AFFIRMED AS MODIFIED.**



        David L. Jungmann of David L. Jungmann, P.C., Greenfield, for appellant.

        Jamie Hunter of Dickey & Campbell Law Firm, PLC, Des Moines, for

appellee.



        Considered by Vaitheswaran, P.J., and Mullins and Bower, JJ.

**MULLINS, Judge.**

Jessie Carter appeals the district court's decree dissolving her marriage to Jared Carter. Jessie challenges the district court's: (1) award of shared physical care of their two children, (2) child-support award relating to the allocation of the children's expenses, (3) denial of her request for spousal support, and (4) award of attorney fees. Both parties request an award of appellate attorney fees.

**I.      Background Facts and Proceedings**

Jessie and Jared were married in February 2009. They are the parents of two children, R.S.C. and A.M.C., born in 2008. Jessie has another child from a prior marriage, P.M.M., born in 2004. P.M.M. resided with the parties and had a close relationship with Jared during the marriage. Jessie and Jared separated for six months in 2013 but reconciled. After the separation, Jared opened a separate bank account. Each month, Jessie paid the monthly bills and Jared would give her a check for half of the amount.

Jessie is a self-employed cosmetologist and runs a salon from home. Her gross income is approximately $27,000.00 per year. Her schedule fluctuates throughout the week and she can change appointments in order to accommodate the children and their activities. Jared is a general manager for an industrial supply company. This position pays a base salary in addition to commissions, which fluctuates. Jared maintains health insurance for the children through his job. Jared also coaches at the local high school, which provides a small salary. His average gross income is approximately $78,000.00 per year. Jared also coaches R.S.C.'s youth football team.

Jessie and Jared separated in July 2017. Jared moved into his own home a short distance away from the marital home. In the year prior to trial, Jared had parenting time with the children, which included overnights, on Tuesdays, Thursdays, and Saturdays. On weekdays, Jared would deliver the children to Jessie the next morning so she could take them to school. During the times Jared's parenting time coincided with his coaching duties, the children would stay with their paternal great-grandparents. During Jessie's parenting time, which coincided with her cosmetology appointments, the children either stayed in the house and P.M.M. provided some supervision or the maternal grandparents watched the children. During basketball season, Jessie and Jared modified the parenting-time arrangement to accommodate Jared's coaching schedule.

After the parties' separation, Jared did not provide financial support to Jessie except for a portion of the children's expenses. Jessie filed for dissolution in January 2018. She did not apply for temporary support. Jared told Jessie to inform him if she needed anything, but she did not directly ask Jared for financial support and incurred additional credit card debt.

At trial, both parties requested joint legal custody. Jessie requested physical care of the children based on Jared's schedule while Jared requested shared physical care. Jessie also requested child and spousal support and attorney fees. Following a one-day trial in August, the district court entered its decree. It awarded the parties joint legal custody and shared physical care of the children. The district court ordered Jared to pay $542.72 to Jessie in monthly child support and directed that both parties would equally share the children's educational and extracurricular expenses. The district court ordered no spousal

support to either party and ordered Jared to pay $5000.00 toward Jessie's attorney fees at a rate of $100.00 per month.

Jessie filed a motion to reconsider, enlarge, or amend under Iowa Rule of Civil Procedure 1.904(2), in which she asked the district court to modify the dissolution decree with respect to the awards of physical care, spousal support, child support, and attorney fees. Following a hearing, the district court did grant Jessie's motion as to child support, modifying its child-support award to $596.84 in monthly support, retroactive to September 1. The district court denied Jessie's requests to modify physical care, spousal support, and attorney fees, but did provide a more thorough explanation for its award of shared physical care based on the factors contained in Iowa Code section 598.41(3) (2018) and *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). All other portions of the decree remained undisturbed and in full force and effect. Jessie appeals.

## II.     Standard of Review

We review dissolution actions de novo. *In re Marriage of Larsen*, 912 N.W.2d 444, 448 (Iowa 2018). "[W]e give weight to the fact findings of the trial court but are not bound by them." *Id.* In child custody matters, our governing consideration is "the best interests of the child[ren]." Iowa R. App. P. 6.904(3)(o).

## III.     Analysis

### A.     Shared Physical Care

Neither party challenges the district court's award of joint legal custody. On appeal, Jessie challenges the district court's award of shared physical care to the parties. She contends throughout the children's lives, she has been the primary care provider and Jared's motivation for more time is financially based. She

argues Jared is only seeking shared physical care to reduce his child-support obligation.

"Physical care issues are not to be resolved based upon perceived fairness to the *spouses*, but primarily upon what is best for the *child*[*ren*]." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). The goal "is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *Id.* An award of shared physical care provides both parents the "rights and responsibilities toward the child[ren] including but not limited to shared parenting time with the child[ren], maintaining homes for the child[ren], providing routine care for the child[ren] and under which neither parent has physical care rights superior to those of the other parent." Iowa Code § 598.1(4). If the court awards joint legal custody to the parents, it may grant shared physical care "upon the request of either parent." *Id.* § 598.41(5)(a). We consider a nonexclusive list of factors to determine "whether a joint physical care arrangement is in the best interests of the child[ren]." *Hensch v. Mysak*, 902 N.W.2d 822, 824 (Iowa Ct. App. 2017) (quoting *In re Marriage of Berning*, 745 N.W.2d 90, 92 (Iowa Ct. App. 2007)).

> The factors are (1) "approximation"—what has been the historical care giving arrangement for the child[ren] between the two parties; (2) the ability of the spouses to communicate and show mutual respect; (3) the degree of conflict between the parties; and (4) "the degree to which the parents are in general agreement about their approach to daily matters."

*Id.* at 824–25 (quoting *Berning*, 745 N.W.2d at 92).

On our de novo review, we find the district court's findings in the dissolution decree and the ruling on Jessie's rule 1.904(2) motion provide a thorough and well-

written explanation for the award of shared physical care to the parties. We agree with the district court's conclusions and affirm the award of shared physical care to Jessie and Jared.

B. Child Support

On appeal, Jessie does not contest the child-support award, but she challenges the allocation of the children's expenses. She argues the allocation should be in proportion to the parties' respective incomes. She contends the expenses should be split seventy-five percent to Jared and twenty-five percent to herself. Jessie also requests clarification and identification of the specific shared expenses.

"[C]hild support is calculated using the child support guidelines." *In re Marriage of Erpelding*, 917 N.W.2d 235, 245 (Iowa 2018); *see* Iowa Code § 598.21B; Iowa Ct. R. 9.2. The guidelines "provide for the best interests of the children by recognizing the duty of both parents to provide adequate support for their children in proportion to their respective incomes." Iowa Ct. R. 9.3(1). There is a "rebuttable presumption that the amount of child support which would result from the application of the guidelines prescribed by the supreme court is the correct amount of child support to be awarded." Iowa Code § 598.21B(2)(c); Iowa Ct. R. 9.4. The child support award "may be adjusted upward or downward, however, if the court finds such adjustment necessary to provide for the needs of the children or to do justice between the parties under the special circumstances of the case." Iowa Ct. R. 9.4. "The child support guidelines are designed to calculate an amount of funds that will 'cover the normal and reasonable costs of supporting a child.'" *In re Marriage of McDermott*, 827 N.W.2d 671, 685 (Iowa

2013) (quoting *In re Marriage of Okland*, 699 N.W.2d 260, 268 (Iowa 2005)). If shared physical care is ordered, the court, in determining the shared-physical-care parenting plan, may order the allocation of expenses in addition to court-ordered child support "to make sure both spouses pay their fair share." *Id.* at 686.

The district court ordered the parties to equally share the children's educational and extracurricular-activity expenses. It also determined that based on their respective net incomes, Jared would pay seventy-five percent and Jessie twenty-five percent of the children's uncovered medical expenses under Iowa Court Rule 9.12(5). Upon our review, given the parties' economic positions and the significant disparity in income, equity requires that the parties split the children's educational and extracurricular-activity expenses based on these same percentages. We therefore modify the dissolution decree to require Jared pay seventy-five percent and Jessie twenty-five percent of the children's school and extracurricular expenses.

C.     Spousal Support

The district court did not award spousal support to either party. On appeal, Jessie asks for transitional alimony based on her financial circumstances. She contends her central need for support is her high debt load.

Spousal support "is not a matter of absolute right, but depends upon the circumstances of each particular case." *Hansen*, 733 N.W.2d at 704. Though our review is de novo, "we accord the trial court considerable latitude" as "the trial court [is] in the best position to balance the parties' needs." *In re Marriage of Gust*, 858 N.W.2d 402, 406, 416 (Iowa 2015). We will only intervene "where there is a failure to do equity." *Id.* at 416. There is no mathematical or fixed formula to calculate

spousal support. *In re Marriage of Mauer*, 874 N.W.2d 103, 107 (Iowa 2016). "[T]he person seeking spousal support has the burden to show . . . she [or he] is entitled to [spousal support] . . . and if she [or he] is entitled to spousal support, its amount and duration." *Gust*, 858 N.W.2d at 418 (Wiggins, J. concurring in part and dissenting in part); *accord In re Marriage of Robert*, No. 11-0876, 2012 WL 2122310, at *5–6 (Iowa Ct. App. June 13, 2012). The court must equitably award spousal support after its consideration of the factors delineated in Iowa code section 598.21A. The court must consider:

> (a) The length of the marriage.
> (b) The age and physical and emotional health of the parties.
> (c) The distribution of property made pursuant to section 598.21.
> (d) The educational level of each party at the time of marriage and at the time the action is commenced.
> (e) The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.
> (f) The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.
> (g) The tax consequences to each party.
> . . . .
> (j) Other factors the court may determine to be relevant in an individual case.

Iowa Code § 598.21A(1). There are multiple types of spousal support, each with a different goal. *In re Marriage of Becker*, 756 N.W.2d 822, 826 (Iowa 2008).

> Traditional spousal support is "payable for life or so long as a spouse is incapable of self-support." Rehabilitative spousal support is "a way of supporting an economically dependent spouse through a limited period of re-education or retraining following divorce, thereby creating incentive and opportunity for that spouse to become self-supporting." The goal of rehabilitative spousal support is self-

sufficiency and for that reason "such an award may be limited or extended depending on the realistic needs of the economically dependent spouse." Reimbursement spousal support allows the spouse receiving the support to share in the other spouse's future earnings in exchange for the receiving spouse's contributions to the source of that income.

*Id.* (citations omitted). The duration of alimony "will differ according to the purpose it is designed to serve." *In re Marriage of O'Rourke*, 547 N.W.2d 864, 866–67 (Iowa Ct. App. 1996). However, the court need not consider only one type of support, instead it must only consider the section 598.21A factors when determining a spousal support award. *Becker*, 756 N.W.2d at 827.

The marriage here lasted only nine years. Both parties are in good emotional and physical health and leave the marriage with the same level of education they had attained before the marriage. In the dissolution decree, the district court recognized the

> definite disparity in Jessie and Jared's incomes and earning capacities. However, Jessie provided no testimony that she made any economic sacrifices during the marriage that directly enhanced Jared's future earning capacity. Jessie and Jared both obtained their educations before their marriage. Jessie also did not testify that she is not capable of self-support, or that she intends to pursue any additional education or training to increase her earning capacity. The only basis Jessie gave for an alimony award was to make it easier for her to pay off credit cards and refinance the marital home.
> Payment of debt and refinancing considerations are not contemplated by the three general purposes alimony is intended to accomplish.

On appeal, Jessie admits that she does not need repayment, additional education, or further training. Instead, she points to her heavy debt load as the reasoning for her spousal-support request. She blames Jared for much of the debt, emphasizing Jared's lack of financial support during their period of separation. However, she also admits she did not seek any type of temporary

support during that time. Though Jared did not voluntarily provide financial support, Jessie admitted that he told her to let him know if she needed help. Instead of either informally asking Jared for help or formally requesting support through the court, she decided to go further into debt. The district court did recognize Jared's lack of financial support during the parties' separation in its award of attorney fees. Upon our review, we find the district court's decision to not award spousal support as equitable under the specific circumstances of this case and affirm.

D.     Attorney Fees

The district court ordered Jared to pay Jessie $5000.00 of her attorney fees at a rate of $100.00 per month. Each party would then be responsible for the balance of their attorney fees. In awarding attorney fees, the district court noted that it "considered the parties' disparity of income, as well as Jared's failure to provide meaningful financial support to Jessie for the children's care during the parties' lengthy separation." On appeal, Jessie contends the attorney-fee award should be higher and Jared should pay it at a higher rate than $100.00 per month given his greater ability to pay.

"Whether attorney fees should be awarded depends on the respective abilities of the parties to pay." *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006) (quoting *In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994)). At the time of trial, Jared earned considerably more than Jessie. While Jessie challenges the attorney-fee award both in the total amount and the amount of each payment, Jessie herself requested "Jared pay $5000 towards [her] attorney fees and . . . Jared shall pay this judgment at the rate of $100 per month" in her filed statement

of requested relief. The district court used Jessie's exact language in its order except for modifying the commencement date of Jared's payments. On our review of the record, we cannot say the district court abused its discretion in awarding fees and therefore affirm. In any event, Jessie cannot be heard to complain on appeal about a ruling she specifically requested. *See, e.g.*, *Jasper v. State*, 477 N.W.2d 852, 856 (Iowa 1991) (noting a litigant "cannot deliberately act so as to invite error and then object because the court has accepted the invitation"); *Odegard v. Gregerson*, 12 N.W.2d 559, 562 (Iowa 1944) (same).

Both parties request appellate attorney fees. "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion." *Sullins*, 715 N.W.2d at 255. We consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* (quoting *Okland*, 699 N.W.2d at 270). Considering the parties' economic positions and the minor modification in Jessie's favor, Jared shall pay $1000.00 toward Jessie's appellate attorney fees. Costs on appeal shall be assessed one-half to each party.

## IV.    Conclusion

We find the district court's findings on the award of shared physical care to be thorough and well-written and agree with the court's conclusions. We also find the district court's decision to not award spousal support to be equitable. We further find the district court did not abuse its discretion in its award of attorney fees to Jessie. Accordingly, we affirm the district court's decisions on shared care, spousal support, and attorney fees. Given the parties' economic positions and the significant disparity in income, equity requires Jared pay seventy-five percent of the children's educational and extracurricular-activity expenses and Jessie pay

twenty-five percent.  We modify the dissolution decree to require the parties to pay the expenses in accordance with those percentages.  Considering the parties' economic positions and the minor modification in Jessie's favor, Jared shall pay $1000.00 toward Jessie's appellate attorney fees.  Costs on appeal shall be assessed one-half to each party.

**AFFIRMED AS MODIFIED.**