**IN THE COURT OF APPEALS OF IOWA**

No. 21-0228
Filed November 3, 2021


**IN RE THE MARRIAGE OF AMBER D. VAN VOORST
AND DOUGLAS L. VAN VOORST**

**Upon the Petition of
AMBER D. VAN VOORST,**
        Petitioner-Appellant/Cross-Appellee,

**And Concerning
DOUGLAS L. VAN VOORST,**
        Respondent-Appellee/Cross-Appellant.
_____


        Appeal from the Iowa District Court for O'Brien County, Nancy L.

Whittenburg, Judge.


        The wife in this dissolution-of-marriage proceeding appeals the property

division and spousal support terms of the district court's decree.  The husband

cross-appeals on spousal support and attorney fees issues.  **AFFIRMED ON

APPEAL; AFFIRMED AND REMANDED ON CROSS-APPEAL.**


        Jenny L. Winterfeld of Klass Law Firm, L.L.P., Sioux Center, for appellant.

        Elizabeth A. Row, Sioux City, for appellee.


        Considered by Mullins, P.J., and May and Ahlers, JJ.

**AHLERS, Judge.**

Amber and Doug Van Voorst were married in 2003 and have two minor children, born in 2005 and 2007.[1] They informally separated in 2018. At the time of trial in 2020, Amber was forty-one years old and Doug was fifty-five.

When the parties met, Amber was an undergraduate student and Doug was working, having previously obtained his GED. At the time, Doug was on parole and owed several fines and back child support. Before marriage, Amber used her student loan proceeds to pay off Doug's outstanding debts.

After the couple married, Amber began working as a registered nurse, and Doug worked in a factory. In 2008, the parties and their children moved to Wisconsin to assist Amber's mother with health issues. In Wisconsin, Amber worked as a nurse manager and began taking classes to obtain an additional degree. Doug worked as a cook in a restaurant.

In 2011, the family moved to South Dakota where Amber began taking classes to become a nurse anesthetist. Again, Doug was working full-time in a factory. Amber took out significant student loans to pay for her tuition as well as family expenses.

After Amber finished her education and became a nurse anesthetist, the family moved back to Wisconsin for two years, where Amber worked a high-paying job she was able to obtain with her new degree. Because Amber burned out in that job, the family returned to Iowa.

---

[1] The parties stipulated to custody and physical care terms about the children, so those issues were not contested at trial or on appeal.

At the time of trial, Amber was employed as a nurse anesthetist, and Doug was working as a truck driver. The district court found Amber's annual income to be $211,602.00 and Doug's annual income to be $45,000.00. Neither party truly disputes these annual earnings figures. Based on our de novo review, we agree with the district court's findings as to the parties' incomes.

Following trial, the district court divided the property in such a way that Amber's net worth following the division is negative $18,462.51 and Doug's net worth is $83,200.50. In making this division and calculating these figures, Amber's 401(k) was valued at the time of trial. The decree requires Doug to pay monthly child support. It also requires Amber to pay Doug monthly spousal support of $2,000.00 until Doug reaches the age of sixty-seven years, Doug's death, or Doug's remarriage, whichever should occur first. Despite Doug's request that Amber pay for his attorney fees, the district court required that each party be responsible for the party's own attorney fees.

Amber appeals the district court's ruling. She makes three arguments: (1) her 401(k) account should have been valued at the time of separation rather than trial; (2) the net property division is inequitable; and (3) the spousal support award is excessive. Doug cross-appeals, contending: (1) the spousal support award was insufficient in amount and duration; (2) he should have been awarded trial attorney fees; and (3) he should be awarded appellate attorney fees.

## I. Standard of Review

Dissolution-of-marriage actions are reviewed de novo. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). "Accordingly, we examine the entire record and adjudicate anew the issue of the property distribution." *Id.* While

we give weight to the findings of the district court, particularly concerning the credibility of witnesses, we are not bound by them. *Id.* The district court's ruling will be disturbed only when the ruling fails to do equity. *Id.* Likewise, in conducting de novo review of spousal support awards, "we accord the trial court considerable latitude" and we will disturb the district "court's order 'only when there has been a failure to do equity.'" *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015) (quoting *In re Marriage of Olson*, 705 N.W.2d 312, 315 (Iowa 2005)).

## II. Discussion

We will address each party's arguments in turn.

### A. Issues Raised by the Wife on Appeal

As noted, Amber raises three issues.

#### 1. 401(k) Account Valuation Date

Amber's 401(k) account increased in value between the date of the parties' separation and the date of trial. Amber contends the district court erred by valuing the account on the date of trial rather than on the date of separation. She contends the account increased in value between the separation and trial dates because she continued to contribute to the account, and such increase in value was not a result of any efforts by Doug.

Generally, the date of trial is the proper valuation date for assets being divided in a dissolution-of-marriage proceeding. *In re Marriage of Keener*, 728 N.W.2d 188, 193 (Iowa 2007); *In re Marriage of Driscoll*, 563 N.W.2d 640, 642 (Iowa Ct. App. 1997). That said, this is not a concrete rule. *Driscoll*, 563 N.W.2d at 642. Equitable distribution must allow for flexibility in our rules, and there may be occasions when the trial date is not the appropriate valuation date. *Id.*

Accordingly, in some cases it may be best to value an asset as of the time of separation rather than the trial date, as is the norm. *Id.* (using as an example *In re Marriage of Tzortzoudakis*, 507 N.W.2d 183 (Iowa Ct. App. 1993), in which the dissolution petition was filed thirty years after the parties separated).

Contrary to Amber's contentions, we do not find this to be a case that warrants deviating from the general rule of using the trial date for valuation. Amber filed the dissolution-of-marriage petition the same month the parties separated, so this is not a case in which there was a lengthy separation before the dissolution proceeding began. Further, the fact Amber contributed to the increase in value of her 401(k) account by continuing to contribute money she withheld from her paycheck is of little consequence. As the parties were still married, Amber's paychecks were still marital property. *See, e.g.*, *In re Marriage of Schriner*, 695 N.W.2d 493, 498 (Iowa 2005) (treating workers' compensation benefits as income that became part of the divisible divorce estate "just as other income becomes property when received and retained during the marriage"); Iowa Code § 598.21(5) (requiring the court to "divide all property" equitably between the parties).

We also note that Amber's contention ignores the fact that dollars are fungible. Each dollar either party received in wages increased the value of the marital estate by doing one (or more) of three things. It either became a marital asset, was used to reduce a marital debt, or was used to pay a marital expense (thus avoiding the need to use other marital assets to pay the expense so that such other marital assets were preserved).[2] Whichever one of these three things each

---

[2] The only other potential use of the wages would have been to waste the money on non-marital expenses. Had that been done, it could lead to a claim of

dollar became, it contributed to the ultimate net worth available for division when the decree was entered. The fact that some of Amber's wages became part of her 401(k) account instead of becoming a different marital asset, being used to reduce a marital debt, or being used to pay a marital expense does not change the divisible nature of the 401(k) account.

Besides Amber's continued contributions to the account, the only other explanation for the increased value of the account between the separation and trial dates would have been an increase in the value of the investments held in the account. Amber asserts there was no evidence introduced at trial that any increase in the value of the account was attributable to a rise in the value of the investments held in the account. If that were true, then the only explanation for the increased value would have been Amber's contributions, which we find to be marital assets that should be valued at time of trial. However, even if the increased value of the account were attributable to an increase in value of the investments, it would not support Amber's claim, as appreciation in value of an asset is still marital property subject to division without regard to whether the appreciation occurred "fortuitously versus laboriously." *In re Marriage of Fennelly & Breckenfelder*, 737 N.W.2d 97, 104 (Iowa 2007) (noting "marriage does not come with a ledger" and finding equal division of appreciated property to be appropriate without regard to how the asset appreciated).

---

dissipation of marital assets and the wasted assets could be treated as if they were part of the marital estate subject to division at the time of dissolution. *See In re Marriage of Kimbro*, 826 N.W.2d 696, 700–01 (Iowa 2013). Here, neither party claims waste or dissipation of assets.

We find the district court properly valued Amber's 401(k) as of the date of trial rather than the date of separation.

### 2. Unequal Property Division

As noted, Amber was awarded assets and debts with a net value of negative $18,462.51,[3] while Doug was awarded assets and debts with a net value of $83,200.50—a difference of nearly $102,000.00. Doug was not ordered to pay Amber an equalization payment despite this disparity. Based on the unequal nature of the property division, Amber contends the property distribution is inequitable.

Property divisions are to be made equitably, not necessarily equally. *In re Marriage of Anliker*, 694 N.W.2d 535, 543 (Iowa 2005). The division of marital assets and debts, rather, must be equitable in light of the circumstances of each case. *Id.* In fact, the determinative factor in each instance is what is fair and equitable based on the circumstances. *In re Marriage of Hazen*, 778 N.W.2d 55, 59 (Iowa Ct. App. 2009). All that said, we note that "it is generally recognized that equality is often most equitable." *Kimbro*, 826 N.W.2d at 703 (quoting *Fennelly*, 737 N.W.2d at 102).

The unequal division here gives us pause. After careful consideration, however, we find the district court's decree to be equitable when considered in its entirety. In particular, we note a fair property distribution must be considered in

---

[3] Although the division of assets and debts left Amber with a net negative figure, we note that she received $416,974.24 of the parties' assets in contrast to Doug, who received $97,015.50 in assets. Amber's negative net worth stems from the debt she received, which consisted mostly of the mortgage debt on the house she received and her student loan debt.

light of the spousal support award. *See Hazen*, 778 N.W.2d at 59; *see also* Iowa Code § 598.21(5)(h) (directing consideration of "[t]he amount and duration of an order granting [spousal] support payments" in determining an equitable property division). Because the property division issue must be viewed along with any spousal support award, we will address Amber's contention that the property distribution is inequitable with the discussion of spousal support.

### 3. Spousal Support Award

Spousal support is not awarded as a matter of right; rather, its award is dependent on the particular circumstances of each individual case. *In re Marriage of Becker*, 756 N.W.2d 822, 825 (Iowa 2008). Accordingly, our prior cases are of little value in determining an appropriate spousal support award, so we look to the factors in the Iowa Code to inform our decision. *Id.* at 825–26. The statutory factors are:

> a. The length of the marriage.
> b. The age and physical and emotional health of the parties.
> c. The distribution of property made pursuant to section 598.21.
> d. The educational level of each party at the time of marriage and at the time the action is commenced.
> e. The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.
> f. The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.
> g. The tax consequences to each party.
> h. Any mutual agreement made by the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by the other party.
> i. The provisions of an antenuptial agreement.

> j. Other factors the court may determine to be relevant in an individual case.

Iowa Code § 598.21A(1).  Application of these factors allows us to determine whether spousal support should be awarded, and, if so, to determine the type and amount of support to award.  *Becker*, 756 N.W.2d at 826.

There are three types of spousal support: traditional, rehabilitative, and reimbursement.  *Id.*  At issue in this case is traditional and reimbursement spousal support, as neither party claims rehabilitative support should apply in this case.  Traditional support is awarded "for life or so long as a spouse is incapable of self-support."  *Id.*  The purpose of traditional or permanent spousal support "is to provide the receiving spouse with support comparable to what he or she would receive if the marriage continued."  *Gust*, 858 N.W.2d at 408.  Reimbursement support "allows the spouse receiving the support to share in the other spouse's future earnings in exchange for the receiving spouse's contributions to the source of that income."  *Becker*, 756 N.W.2d at 826.  The characterization of spousal support is largely inconsequential—courts are not required to categorize what type of support is being awarded, and the award may be a combination of more than one type of support.  *Id.* at 827–28.

The amount and duration of spousal support is disputed.  Amber initially requested that she be required to pay Doug $1,000.00 per month for four years, while Doug requested that Amber be required to pay $3,500.00 per month until he remarries or dies.  The court determined that a combination of traditional and reimbursement spousal support was appropriate.  The court then ordered Amber

to pay Doug $2,000.00 per month until Doug dies, remarries, or reaches the "full-retirement age of sixty-seven (67) years."

The district court thoroughly, thoughtfully, and accurately discussed the statutory factors listed in Iowa Code section 598.21A(1)(a)–(j) in determining the spousal support amount and duration, and we see no reason to diverge from those findings following our de novo review. To highlight some of those factors, we note Doug and Amber were married for seventeen years. Doug is significantly older than Amber, has far less education, has a much lower earning capacity, and has multiple health issues. Further, Doug made several employment changes and relocated several times during Amber's schooling to help support her and the family while she was obtaining her advanced degrees. We agree with the district court's assessment that "Amber's achievements were accomplished through her hard work and through child care contributions from Doug as well as his unswerving support of her pursuit of her career goals."

As discussed above, spousal support awards and property distributions are to be considered in tandem. Doug received an unequal amount of the marital net worth along with a spousal support award. However, despite the unequal nature of the property division, we find it is equitable when considered in tandem with the spousal support award. Based in large part on the significant disparity in the parties' earning capacities coupled with Doug's contributions toward Amber's educational advancements and higher earnings, we conclude the equities would have justified the district court awarding Doug a considerably higher spousal support award and for a longer duration. In other words, the spousal support award is on the low end of the range of reasonableness. As mentioned previously, the

disparity in the property division gives us pause. However, the amount and duration of the spousal support being on the low end of the reasonableness range causes us to conclude it counterbalances and offsets the unequal property division.

This type of balancing between a spousal support of a lower amount for a shorter term and an increased property distribution is equitable based on these parties' circumstances. *See Hazen*, 778 N.W.2d at 59 (noting property division and spousal support are considered together in determining their sufficiency). Terminating spousal support once Doug reaches the full retirement age of sixty-seven is similarly equitable considering the disparity in the property division. As noted by the district court, the spousal support award has elements of traditional support—ensuring Doug can be self-supporting—and elements of reimbursement support—ensuring Doug sees a return on the sacrifices he made during the marriage to help Amber achieve her significantly increased earning capacity. The provision to terminate support prior to death or remarriage reflects the rehabilitative elements of the award, and we find that to be the proper balance to strike considering the unequal property division and the parties' circumstances in general.

Having considered the property division and spousal support award in relation to each other, we conclude the district court's order equitably addressed both issues. *McDermott*, 827 N.W.2d at 676 (noting that the district court's ruling will be disturbed only when the ruling fails to do equity); *Gust*, 858 N.W.2d at 406 (same).

**B.      Issues Raised by the Husband on Cross-Appeal**

Before addressing the merits of Doug's cross-appeal, we will first address his motion to strike the portion of Amber's final brief that responds to the cross-appeal issues discussed in Doug's brief.  Our rules of appellate procedure permit the appellant to file a proof reply brief.  Iowa R. App. P. 6.901(1)(c).  If, as in this case, there is a cross-appeal and the appellant files a proof reply brief, the appellee/cross-appellant then has the opportunity to file a responsive reply brief in final form.  Iowa R. App. P. 6.901(1)(c); 6.903(5).

In this case, Amber did not file a reply brief before filing her final appellant's brief.  Instead, in preparing her final appellant's brief, she added a section replying to the cross-appeal issues raised in Doug's appellee's brief.  This action by Amber violated rule 6.901(1)(c) (requiring her to file a proof reply brief or a statement waiving any further proof brief) as well as rule 6.904(4)(b) (prohibiting changes between the proof and final briefs other than the manner of citing the record and to correct typographical errors).  On top of violating our rules, Amber's actions prejudiced Doug by effectively eliminating his ability to file a responsive reply brief, thus eliminating his ability to get the last word on the cross-appeal issues, as he is entitled to under our rules.  For these reasons, we grant Doug's motion and strike the offending portions of Amber's final brief.  We also deny Amber's motion to amend her brief.  Having granted Doug's motion, we have not considered the stricken portions of Amber's brief.

### 1.      Amount and Duration of the Spousal Support Award

On cross-appeal, Doug contends the spousal support Amber was required to pay is insufficient.  For the reasons stated above in assessing Amber's challenge

to the spousal support award, we find the spousal support award adequate and equitable. While the spousal support award is conservative in amount and duration, it is still within the range of reasonableness. Further, the favorable property division Doug received equitably counterbalances any perceived shortfalls in the spousal support award. The district court's decree achieves equity.

### 2. Trial Attorney Fees

Doug challenges the district court's denial of his request that Amber pay his attorney fees. We review awards of attorney fees for an abuse of discretion. *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). Whether fees should be awarded depends on the respective parties' abilities to pay. *Id.* Evidence at trial showed Amber paid $12,000.00 of Doug's attorney fees while the case was pending. Based on that payment, coupled with the property division and spousal support awards, the district court declined Doug's request for an additional attorney fee award. Despite the disparity in the parties' incomes, we find no abuse of the district court's discretion in denying Doug's request.

### 3. Appellate Attorney Fees

Doug requests that Amber be responsible for paying his appellate attorney fees.

> Appellate attorney fees are not a matter of right, but rather rest in this court's discretion. Factors to be considered in determining whether to award attorney fees include: "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal."

*In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005) (quoting *In re Marriage of Geil*, 509 N.W.2d 738, 743 (Iowa 1993)). Assessing these factors, we note Doug has need for an award of appellate attorney fees and Amber has the ability to pay.

In terms of the merits of the appeal, we note Amber did not succeed on the issues she raised on appeal, but Doug did not succeed on the issues he raised on cross-appeal. Balancing these factors, we find Amber should be ordered to pay twenty-five percent of Doug's appellate attorney fees. As we have no affidavit or other evidence of Doug's appellate attorney fees, we are unable to calculate the appropriate figure, and a remand is necessary. We hereby remand this matter to the district court. On remand, the sole issue before the court is to determine the reasonable and necessary amount of Doug's appellate attorney fees. Once that amount is determined, the district court shall order Amber to pay Doug or Doug's attorney twenty-five percent of that amount.

## III. Conclusion

The district court's decree dividing the parties' property and establishing Amber's spousal support obligation to Doug achieved equity between the parties. The court did not abuse its discretion in denying Doug's request for an award of trial attorney fees. As a result, we affirm the court's entire decree. Amber shall be responsible for twenty-five percent of Doug's appellate attorney fees, to be calculated on remand as explained in this opinion. Costs on appeal are taxed equally between the parties.

**AFFIRMED ON APPEAL; AFFIRMED AND REMANDED ON CROSS-APPEAL.**