# IN THE SUPREME COURT OF IOWA

No. 21–1918

Submitted December 14, 2022—Filed January 27, 2023

**IN RE THE MARRIAGE OF RACHAEL KAY SOKOL AND DAVID LANGDON SOKOL.**

Upon the Petition of **RACHAEL KAY SOKOL,**

Appellee,

and Concerning **DAVID LANGDON SOKOL,**

Appellant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Jeanie K. Vaudt, Judge.

A spouse seeks further review of a court of appeals decision modifying the spousal support award. **DECISION OF COURT OF APPEALS AFFIRMED IN PART AND REVERSED IN PART; DISTRICT COURT JUDGMENT AFFIRMED AS MODIFIED.**

McDonald, J., delivered the opinion of the court, in which Christensen, C.J., and Oxley, McDermott, and May, JJ., joined. Mansfield, J., filed an opinion concurring in part and dissenting in part, in which Waterman, J., joined.

Kate Simon and Tyler J. Johnston of Cordell Law, LLP, Des Moines, for appellant.

Stacey N. Warren of CashattWarren Family Law, P.C., Des Moines, for appellee.

**McDONALD, Justice.**

Transitional spousal support "is appropriate when a party capable of self-support nevertheless needs short-term financial assistance to transition from married to single life." *In re Marriage of Mills*, ___ N.W.2d. ___, ___ (Iowa 2022) (emphasis omitted) (quoting *In re Marriage of Pazhoor*, 971 N.W.2d 530, 545 (Iowa 2022)). Transitional spousal "support is intended to resolve a short-term liquidity crunch" and "should be of a short duration." *Id.* at ___. In this case, the court of appeals modified a dissolution decree to award a payee spouse seven years' transitional spousal support. On further review, we conclude the court of appeals erred in modifying the decree to award transitional spousal support under the circumstances presented.

I.

Rachael and David Sokol married in 2002. There were two children born into the marriage, one in 2006 and another in 2014. In 2019, Rachael petitioned for dissolution of the marriage. Following a two-day virtual trial, the district court entered its decree in August 2021.

At the time of the decree, Rachael was 45 and David was 43. Rachael earned $440,000 per year as a doctor. David owned a home repair and remodeling business, which he started in 2013. The company grew over the years and had approximately $553,000 in revenue in 2020; David, however, had never paid himself a salary from the company. Based on the company financials, the district court imputed to him annual income of $50,000. The Sokols owned a residence, a commercial property, several vehicles, retirement accounts,

extensive personal property, and other assets. The Sokols also had debt, including mortgages on the property, Rachael's student loans, and several credit cards.

With respect to the children, the district court granted Rachael and David joint legal custody and shared physical care, with Rachael to pay David $2,000 per month in child support. Although the district court granted the parties joint legal custody of the children, the decree provided Rachael could "decide on the course of action" with respect to decisions for the children. Regarding the division of property, the district court equitably divided the Sokols' assets. Rachael received the marital home, one vehicle, her retirement account, half of the expected income tax refunds, various tactical gear, the entirety of her student loan debt, and all the couple's shared credit card debt. David received the commercial property, two vehicles, his retirement account, half of the expected income tax returns, and all assets belonging to his business. In total, the district court awarded each party net assets of approximately $660,000. As to spousal support, the district court ordered Rachael to pay David $3,000 per month in rehabilitative spousal support for four years. The district court reasoned the support was necessary to give David time to build a more "concrete, realistic business model" and "improve his earning capacity."

David timely filed his notice of appeal, and we transferred the matter to the court of appeals. With respect to custody, David argued the district court's grant of final decision-making authority to Rachael was not consistent with joint legal custody. Regarding the property division, David argued: (1) the district

court double-counted the value of commercial property awarded to him, (2) the district court erred in awarding Rachael certain guns and tactical gear that were registered in David's name, (3) the district court erred in awarding Rachael $85,000 more than David by rejecting his valuation of certain property, and (4) the district court erred in treating Rachael's medical school debt as a marital debt. As to spousal support, David argued the length of the marriage warranted traditional, rather than rehabilitative, spousal support. David emphasized that more substantial awards are commonplace in dissolutions of long marriages in which one spouse has significantly higher earning capacity than the other.

The court of appeals affirmed the dissolution decree with modifications. With respect to custody, the court of appeals held the grant of final decision-making authority to Rachael was not consistent with joint legal custody and modified the decree accordingly. Regarding the property division, the court of appeals affirmed the district court in all respects. As to spousal support, the court of appeals modified David's award from rehabilitative support at $3,000 per month for four years to transitional support at $5,000 per month for seven years. In the court of appeals' view, this was necessary to "bridge the gap" and "assist[] David with the transition from married to single life." The court of appeals also reasoned the "award will provide David time to build his business and draw sufficient income to maintain a comparable standard of living to what he enjoyed during the marriage."

Rachael filed an application for further review contesting the court of appeals modification of the spousal support award. David did not resist the

application for further review, and he did not seek further review of any issue. "When considering an application for further review, we have discretion to review all the issues raised on appeal or in the application for further review or only a portion thereof." *In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016). We exercise our discretion by limiting our review to the spousal support award. The decision of the court of appeals is final as to all other issues. *See id.*

## II.

Our review of a spousal support award is de novo. *In re Marriage of Mann*, 943 N.W.2d 15, 18 (Iowa 2020). "Although our review is de novo, we afford deference to the district court for institutional and pragmatic reasons." *Hensch v. Mysak*, 902 N.W.2d 822, 824 (Iowa Ct. App. 2017). The institutional deference afforded the district court in determining spousal support counsels against undue tinkering with spousal support awards. An appellate court should disturb the district court's determination of spousal support "only when there has been a failure to do equity." *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015) (quoting *In re Marriage of Olson*, 705 N.W.2d 312, 315 (Iowa 2005)). Otherwise, "[w]hen appellate courts unduly refine these important, but often conjectural, judgment calls, they thereby foster appeals in hosts of cases, at staggering expense to the parties wholly disproportionate to any benefit they might hope to realize." *In re Marriage of Benson*, 545 N.W.2d 252, 257 (Iowa 1996) (en banc).

## III.

Alimony originated in English ecclesiastical courts as an obligation of the husband to provide continued support for his wife upon separation. *E.g.* Cynthia

Lee Starnes, *One More Time: Alimony, Intuition, and the Remarriage-Termination Rule*, 81 Ind. L.J. 971, 983 (2006) [hereinafter Starnes]. This was a time when absolute divorce was not available, or at least not readily available:

> Prior to the English reforms of 1857, the rationale for alimony was simple enough: upon marriage a husband undertook a lifetime obligation to support his wife. Although he could obtain a legal separation from her (*divorce a mensa et thoro*), rarely could he fully sever marital ties (*divorce a vinculo*). Accordingly, a husband's duty of support continued throughout his wife's life, whether or not they lived together. Alimony was the mechanism, designed by the English ecclesiastical courts, for enforcing the husband's lifetime obligation to support and sustain his wife. Indeed, the word "alimony" derives from the Latin "*alimonia*," which means sustenance.
>
> Underpinning the husband's support obligation was an assumption that married women should not be expected to support themselves. Employment opportunities for women were limited, and a married woman's property was subject to her husband's control. Indeed, at common law a married woman's identity merged into that of her husband, who bore a moral and legal obligation to provide for her. As Blackstone observed, "[T]he very being or legal existence of the woman is suspended during the marriage, or at least is incorporated and consolidated into that of the husband; under whose wing, protection, and cover, she performs everything . . . ."

*Id.* (alteration and omission in original) (footnotes omitted) (quoting 1 William Blackstone, *Commentaries* *442); *accord Jolly v. Jolly*, 1 Iowa 9, 11 (1855) ("It is the nourishment—the maintenance—the allowance made for the support of the wife, which is given and fixed by the proper court out of the husband's estate, when they are legally separated."); Robert Kirkman Collins, *The Theory of Marital Residuals: Applying an Income Adjustment Calculus to the Enigma of Alimony*, 24 Harv. Women's L.J. 23, 39–48 (2001) [hereinafter Collins] (summarizing historical justifications for alimony); Chester G. Vernier & John B. Hurlbut, *The*

*Historical Background of Alimony Law and Its Present Statutory Structure*, 6 L. & Contemp. Probs. 197, 197–98 (1939) (summarizing history of alimony).

Iowa had long-recognized alimony—the duty of the husband to provide for his former wife—as a form of relief for the wife in a dissolution action. Our territorial statutes provided "the court shall make such order and decree touching . . . the alimony and maintenance of the wife . . . as from the nature of the case and circumstances of the parties may appear to the court equitable and just." Iowa Rev. St. ch. 65, § 5 (Terr. 1843). The 1851 Iowa Code provided that "[w]hen a divorce is decreed the court may make such order in relation to the . . . property of the parties and the maintenance of the wife as shall be right and proper." Iowa Code § 1485 (1851).

This concept of alimony—as a form of maintenance for the wife—remained unchanged until 1977. In 1977, the general assembly broadened the concept of alimony to include spousal support equally available to either party. 1977 Iowa Acts ch. 138, § 1 (codified at Iowa Code § 598.21 (1979)) (providing the court may enter order for "the maintenance of the parties as shall be justified"). At present, the Code provides, "Upon every judgment of annulment, dissolution, or separate maintenance, the court may grant an order requiring support payments to either party for a limited or indefinite length of time . . . ." Iowa Code § 598.21A(1) (2019). The Code then provides a list of factors for the district court to consider in determining whether to award spousal support and in determining the amount and duration of any such award. *Id.* § 598.21A(1)(*a*)–(*j*).

While Iowa law has long recognized that one party may be required to provide financial support to the other party upon dissolution of the marriage, the theoretical justification for the provision of such support has not been well-developed. The lack of theoretical justification is not unique to Iowa. *See Starnes*, 81 Ind. L.J. at 984 ("These visions of limited divorce and lifetime support obligations, of course, do not satisfactorily explain alimony after the advent of absolute divorce."). As the American Law Institute has noted:

> Shifting conceptions of alimony's purpose underlie its recharacterization in recent years as "maintenance" or "spousal support." No single model has proven satisfactory, however, and alimony remains a residual category, functionally defined as those financial awards available in connection with the dissolution of a marriage that are not child support or the division of property.

Am. L. Inst., *Principles of the Law of Family Dissolution: Analysis and Recommendations* § 5.01 cmt. *a*, at 875 (2002) [hereinafter *Principles of the Law of Family Dissolution*]. Another commentator explained:

> American cases elaborate upon the statutory rules, but actual alimony awards as well as their rationales vary from jurisdiction to jurisdiction and from case to case. Even the definition of 'need'—the most fundamental issue created by such statutes—is hopelessly confused. Is the wife 'in need' only when she is unable to support herself at a subsistence level? A moderate middle class level? The level to which she was accustomed in the marriage, no matter how high? The courts have used all of these approaches. Without an articulated theory, we cannot argue that any of these definitions is correct. In short, no one can explain convincingly who should be eligible to receive alimony, even though it remains in almost every jurisdiction.

Ira Mark Ellman, *The Theory of Alimony*, 77 Calif. L. Rev. 1, 4–5 (1989) [hereinafter Ellman] (footnotes omitted).

As there is no consensus justification for the provision of spousal support, numerous theories abound. For its part, the American Law Institute has adopted a loss-based approach to spousal support. *See Principles of the Law of Family Dissolution* § 5.02 cmt. *a,* at 878 ("The principal conceptual innovation of this Chapter is therefore to recharacterize the remedy it provides as *compensation for loss* rather than *relief of need.*"). Other theoretical justifications include contract, partnership, restitution, fault, protection of the public fisc, and needs-based analysis, among a host of others. *See* Collins, 24 Harv. Women's L.J. at 39–48 (summarizing justifications); Ellman, 77 Calif. L. Rev. at 13–40 (summarizing justifications). "While various theories have since been articulated to explain continuation of the practice, alimony in cases of absolute divorce seems to have survived through inadvertence rather than by deliberation." Collins, 24 Harv. Women's L.J. at 28. In this area, as with many others, "[t]he life of the law has not been logic: it has been experience." Oliver Wendell Holmes, Jr., *The Common Law* 1 (Dover ed. 1991) (1881).

In the absence of any grand theory, Iowa's courts have nonetheless, case by case, developed workable constructs to channel judicial discretion in awarding spousal support. "Spousal support is not an absolute right; rather, its allowance is determined based on the particular circumstances presented in each case." *Mills,* ___ N.W.2d at ___. Iowa courts are "to equitably award spousal support by considering" the criteria listed in Iowa Code section 598.21A(1). *Mauer,* 874 N.W.2d at 107. In applying these statutory criteria, our precedents have recognized four forms of spousal support deemed equitable: traditional,

reimbursement, rehabilitative, and transitional. *Pazhoor*, 971 N.W.2d at 539–42; *Gust*, 858 N.W.2d at 408. "Each type of spousal support has a different goal." *In re Marriage of Becker*, 756 N.W.2d 822, 826 (Iowa 2008). The amount and duration of a spousal support award should be tailored to achieve the underlying equitable purpose of the spousal support award. *Mills*, ___ N.W.2d at ___ ("The precise 'amount and duration' of a spousal support award will vary 'according to the purpose it is designed to serve.' ") (quoting *In re Marriage of Hettinga*, 574 N.W.2d 920, 922 (Iowa Ct. App. 1997) (en banc)).

An award of traditional spousal support is equitable in marriages of long duration to allow the recipient spouse to maintain the lifestyle to which he or she became accustomed. *Gust*, 858 N.W.2d at 412. Generally, only "marriages lasting twenty or more years commonly cross the durational threshold and merit serious consideration for traditional spousal support." *Id.* at 410–11. When traditional spousal support is ordered, the duration of support should correspond with need. *Id.* at 411. "Termination of spousal support may be appropriate when 'the record shows that a payee spouse has or will at some point reach a position where self-support at a standard of living comparable to that enjoyed in the marriage is attainable.' " *Mauer*, 874 N.W.2d at 111 (quoting *Gust*, 858 N.W.2d at 412).

Reimbursement "support allows the spouse receiving the support to share in the other spouse's future earnings in exchange for the receiving spouse's contributions to the source of that income." *Becker*, 756 N.W.2d at 826. It "is predicated upon economic sacrifices made by one spouse during the marriage

that directly enhance the future earning capacity of the other." *In re Marriage of Francis*, 442 N.W.2d 59, 64 (Iowa 1989) (en banc). Reimbursement support may be warranted where, for example, "a spouse contributed to the other's earning capacity" by supporting them through a degree program and where the supporting spouse "cannot otherwise be compensated for their contributions." *Pazhoor*, 971 N.W.2d at 544. Generally, reimbursement support should "not be subject to modification or termination until full compensation is achieved. Similar to a property award, but based on future earning capacity rather than a division of tangible assets, it should be fixed at the time of the decree." *Francis*, 442 N.W.2d at 64.

"Rehabilitative spousal support is 'a way of supporting an economically dependent spouse through a limited period of re-education or retraining following divorce, thereby creating incentive and opportunity for that spouse to become self-supporting.'" *Becker*, 756 N.W.2d at 826 (quoting *Francis*, 442 N.W.2d at 63). Without a showing that the recipient spouse seeks reeducation, retraining, or some discrete period of time to increase earning capacity to become self-supporting, rehabilitative spousal support is inappropriate. *See Francis*, 442 N.W.2d at 64. "Because self-sufficiency is the goal of rehabilitative alimony, the duration of such an award may be limited or extended depending on the realistic needs of the economically dependent spouse, tempered by the goal of facilitating the economic independence of the ex-spouses." *Id.*

Lastly, transitional spousal support is warranted where the recipient spouse may already have the capacity for self-support at the time of dissolution

but needs short-term assistance in transitioning to single life. *See Pazhoor*, 971 N.W.2d at 541–42. Dissolution of the marriage is expensive for the family unit: one residence becomes two, two beds become four, one set of pots and pans becomes two sets, etc. This requires a sufficient amount of liquidity for down payments, security deposits, a new vehicle, household items, and the like. *See, e.g., In re Marriage of Hinshaw*, No. 12–1783, 2013 WL 3273584, at *5 (Iowa Ct. App. June 26, 2013) (affirming transitional spousal support award where spouse testified support would get her on her feet in "establishing a residence for herself and the children"); *In re Marriage of Byrne*, No. 03–0788, 2003 WL 23220082, at *3 (Iowa Ct. App. Nov. 26, 2003) ("Of the approximately eighty thousand dollars worth of property she received, less than one half of that amount was in cash or other liquid assets available to assist in her transition to self-sufficiency."). Where the requesting spouse has sufficient income or liquid assets to meet these immediate needs, transitional spousal support is inappropriate. *See Pazhoor*, 971 N.W.2d at 541–42. With respect to duration, the immediate needs of the recipient spouse generally "can be addressed through the issuance of orders on temporary matters while the dissolution proceeding is pending. But if additional relief is still necessary to assist in that transition, it should be of a short duration." *Mills*, ___ N.W.2d at ___.

The generally recognized categories of spousal support are not mutually exclusive. Courts may issue hybrid awards "to accomplish more than one of the foregoing goals." *Pazhoor*, 971 N.W.2d at 539. "[T]here is nothing in our case law that requires us, or any other court in this state, to award only one type of

support." *Becker*, 756 N.W.2d at 827. This does not mean, however, that courts are free to award spousal support not corresponding to any recognized category of support. Although the generally recognized categories of spousal support are not mutually exclusive, they are the exclusive categories of spousal support our precedents have recognized as equitable.

The district court's discretion within these generally-recognized categories is broad, but the district court's discretion outside these generally-recognized categories is limited. The facts justifying an award of spousal support not falling within the well-established equitable categories should be extraordinary. *See, e.g.*, *Mills*, ___ N.W.2d at ___ (affirming award of traditional spousal support where the mother suffered permanent disability during childbirth even where the marriage was not close to meeting the "the typical durational threshold").

With that background, we directly address the spousal support award at issue here. The district court ordered Rachael to pay David $3,000 per month for four years as rehabilitative spousal support. The court of appeals modified this award to $5,000 per month for seven years as transitional spousal support. Rachael sought further review of the court of appeals decision, but David did not. In our discretion, we limit our consideration to whether the court of appeals erred in modifying the district court's spousal support award.

We conclude the court of appeals modification was erroneous in two respects. First, the court of appeals erred in concluding transitional, rather than rehabilitative, spousal support is appropriate here. Transitional spousal support and rehabilitative spousal support are separate and distinct and serve different

purposes. *See Pazhoor*, 971 N.W.2d at 541–42 ("Transitional alimony can ameliorate inequity unaddressed by the other recognized categories of support. . . . We now formally recognize transitional alimony as another tool to do equity."). Transitional spousal support addresses short-term liquidity needs associated with splitting one household into two; whereas rehabilitative spousal support addresses training, education, work-readiness, and human capital development.

There is no evidence in this record that David needed transitional spousal support. He was awarded approximately $660,000 in the property settlement, including significant liquid assets held in several checking accounts. *See id.* at 545 ("Transitional alimony is not needed when the recipient has sufficient income or liquid assets to facilitate the change to single life."). What David needed was sufficient time to improve his skills and retool his business plan to increase his income. That is what the district court's well-reasoned rehabilitative spousal support award was shaped to do. This is not a case of transitional support but instead one of rehabilitative support, and the court of appeals erred in concluding otherwise. *See id.* at 540 ("Transitional alimony is not centered on retraining and the growth of human capital, which is the focus of rehabilitative alimony.").

Second, the court of appeals erred in concluding that a transitional spousal support award of seven years would be equitable. As noted above, transitional spousal support should be short in duration. Those states recognizing transitional, or bridge-the-gap, support have also concluded it

should be of short duration. *See id.* at 540–41 (collecting cases). Because transitional spousal support is focused on solving a short-term liquidity issue, a transitional spousal support award generally should not exceed one year in duration. *See Hettinga*, 574 N.W.2d at 922 ("An alimony award will differ in amount and duration according to the purpose it is designed to serve.").

## IV.

In sum, we affirm in part and reverse in part the decision of the court of appeals. We affirm the court of appeals modification of the custodial provisions of the decree, and we affirm the court of appeals decision affirming the district court's property division. We reverse the court of appeals modification of the district court's spousal support award in its entirety. The court of appeals modification of the decree directing Rachael to pay David transitional spousal support for a period of seven years is inconsistent with our caselaw regarding both the category and duration of spousal support. The district court's order directing Rachael to pay David rehabilitative spousal support in the amount of $3,000 per month for a period of four years is consistent with our caselaw regarding both the category and duration of spousal support.

**DECISION OF COURT OF APPEALS AFFIRMED IN PART AND REVERSED IN PART; DISTRICT COURT JUDGMENT AFFIRMED AS MODIFIED.**

Christensen, C.J., and Oxley, McDermott, and May, JJ., join this opinion. Mansfield, J., files an opinion concurring in part and dissenting in part, in which Waterman, J., joins.

**MANSFIELD, Justice (concurring in part and dissenting in part).**

I respectfully dissent in part. I would affirm all aspects of the court of appeals decision, including the award of spousal support. While I agree with the majority's general statements of legal principles governing alimony in Iowa, I disagree with how the majority has applied them in the present case.

I also think the majority is being perhaps unfair to the court of appeals. In a case decided less than a year ago, we decided to recognize a fourth form of alimony—"transitional" alimony—by way of dicta in a case where we weren't awarding transitional alimony. *See In re Marriage of Pazhoor*, 971 N.W.2d 530, 541, 545 (Iowa 2022). The new title we used, "transitional," is perhaps confusing because one of our three existing forms of alimony, "rehabilitative," is also transitional in nature. That is, both rehabilitative and transitional alimony are meant to facilitate the receiving spouse's transition to life without the other spouse. *See id.* at 544–45. With the benefit of today's decision, the distinctions should now be clearer, but we should not overturn a court of appeals decision that correctly applies the law of spousal support even though it may have chosen the wrong words.

## I. "Tinkering" with Alimony.

I agree that appellate courts should be reluctant to interfere with awards of spousal support. We have said that this should occur only when there is "a failure to do equity." *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015) (quoting *In re Marriage of Olson*, 705 N.W.2d 312, 315 (Iowa 2005)). Unless and

until our state adopts formal alimony guidelines, appellate courts should not be second-guessing lower courts' judgment calls.

But tinkering is tinkering whether we do it or the court of appeals does it. I might have voted to affirm the district court's alimony award if I had been on the court of appeals, but today for the same reasons, we ought to be predisposed to let the court of appeals' award stand. Given the length of marriage and the large, longstanding difference in the spouses' incomes and earning capacities, the court of appeals' award of $5,000 per month for seven years seems well within the range of reasonableness.

The majority quotes from *In re Marriage of Benson*, 545 N.W.2d 252 (Iowa 1996) (en banc), to support its no-tinkering credo. I am puzzled by the inclusion of the *Benson* quotation here. The present case is not one where appealing the alimony award involves "staggering expense to the parties wholly disproportionate to any benefit they might hope to realize." *Id.* at 257. Rather, the amounts at stake are substantial. Indeed, the court of appeals increased the alimony by a total of $276,000. Also, the *marginal* cost of appealing alimony here was relatively small because the legal error in the custody determination already provided a ground for appeal.

## II. *In re Marriage of Pazhoor.*

The court of appeals will likely feel that it has been blindsided and treated unfairly by today's ruling. Just last year, *after* the district court decree had been entered in this case, we decided *In re Marriage of Pazhoor*, 971 N.W.2d 530. There we increased a district court award of alimony from $7,500 a month over five

years to $8,500 a month over seven years. *Id.* at 545–46. *Pazhoor* involved a physician with annual income of $415,000 to $500,000 and a spouse whose annual income was only $23,000. *Id.* at 535. The spouse with the far lower income had a medical degree but no medical license. *Id.* at 534. The marriage had lasted seventeen years. *Id.* at 536. We held that "hybrid traditional and rehabilitative alimony" justified the seven-year, $8,500 per month alimony, noting that the physician "can afford to pay substantial alimony, the disparity in the parties' earning capacity is great, and the marriage lasted seventeen years." *Id.* at 546.

The court of appeals used *Pazhoor* as its blueprint to decide this case. It reviewed the facts and law of *Pazhoor* and said that it found the case "instructive." It is not surprising the court of appeals turned to *Pazhoor* for guidance; not only was *Pazhoor* our latest decision on alimony, but its facts are similar. Here, as in *Pazhoor*, Rachael was a physician earning approximately $500,000 annually when she filed for divorce. She had given up her medical director position in 2020 but still earned $440,000 annually. David had originally worked as a furniture salesman earning $70,000 per year while Rachael was completing her residency. However, David had long ago given up that job and started his own business, which had not been paying him a salary. The parties' marriage had lasted nineteen years. Moreover, David's business had suffered economically during the COVID-19 pandemic and had endured considerable physical damage in the 2020 derecho.

The court of appeals, relying on *Pazhoor*, found that $5,000 a month alimony was appropriate here. It noted that this amount was appropriate to "provide David time to build his business and draw sufficient income to maintain a comparable standard of living to what he enjoyed during the marriage." This alimony could also provide time for him to "shift careers back into sales."

The majority harvests *Pazhoor* for some single-sentence legal propositions. Yet it never actually discusses the case itself or attempts to explain why it might be distinguishable. I find *Pazhoor* pretty close to the present case. I think the court of appeals deserves some explanation as to how it went astray in following *Pazhoor*. I don't think it did.

**III. Labels.**

In my view, the only quibble one can have with the court of appeals decision in this case is one of nomenclature. The court of appeals described the alimony it was ordering as "transitional," whereas *Pazhoor* described the similar type of alimony it was awarding as "hybrid traditional and rehabilitative alimony." 971 N.W.2d at 546.

I believe the court of appeals' labeling error is excusable. *Pazhoor* had just been decided a few months before. In *Pazhoor* we decided to recognize a new type of alimony: transitional alimony. *Id.* at 539–42, 545. We then said transitional alimony didn't apply, without giving much explanation for why it didn't apply. *See id.* at 545. This departs from our usual practice. Normally, we don't recognize a new legal principle in a case where the principle isn't relevant—that's pure dictum. Also, *Pazhoor* didn't provide a lot of details on how transitional alimony

actually works or how it differs from rehabilitative alimony. *See id.* at 544–45. Consider the following excerpt from *Pazhoor*:

> Transitional alimony can ameliorate inequity unaddressed by the other recognized categories of support. Divorcing spouses must adjust to single life. If one is better equipped for that adjustment and the other will face hardship, then transitional alimony can be awarded to address that inequity and bridge the gap. We now formally recognize transitional alimony as another tool to do equity.

*Id.* at 542. Respectfully, our opinion in *Pazhoor*—which I wholeheartedly joined— didn't provide much guidance for lawyers or lower courts.

Finally, the word "transitional" is itself somewhat confusing because rehabilitative alimony is *also* transitional. In fact, *Pazhoor* may have unintentionally added to that confusion. In *Pazhoor*, we described a prior case, *In re Marriage of Mann*, 943 N.W.2d 15 (Iowa 2020), as a situation where we "declined to award transitional alimony," which it really wasn't. *Pazhoor*, 971 N.W.2d at 539. In *Mann*, we actually declined to award *rehabilitative* alimony, stating "that *such transitional alimony* is usually appropriate in the context of a traditional marriage where a spouse has surrendered economic opportunities and needs a period of time to get retooled to enter the work force." 943 N.W.2d at 23 (emphasis added). In other words, all we were saying in *Mann* was that rehabilitative alimony is transitional *in nature*. *See id.* It is understandable why the court of appeals got its signals crossed in the present case.

The more important question, though, is whether the court of appeals decision should be cast aside simply because it used the wrong verbiage. I think not. If you read the substantive reasoning behind the court of appeals decision, the court is discussing and relying on considerations pertinent to a hybrid of

traditional and rehabilitative alimony—e.g., (1) that "the disparity in earning capacity will remain great," (2) that the award of alimony will allow David "to maintain a comparable standard of living to what he enjoyed during the marriage," (3) that David needs time to rebuild and fortify his business so it generates income for him, and (4) that if David can't build up his business he needs time "to rejoin the workforce in a sales position similar to what he worked in before the family's return to Iowa." Makes sense to me.

Moreover, putting aside the importance of being fair to the court of appeals, David shouldn't pay a price simply because the court of appeals may have followed the correct principles but used the wrong name for them. In appealing the district court award, he specifically asked for traditional alimony on top of the rehabilitative alimony he had been granted by the district court. The court of appeals in effect went partway, granting David a hybrid of transitional and rehabilitative alimony while calling it something else.

**IV. Conclusion.**

For the reasons stated, I would affirm the court of appeals decision in its entirety.

Waterman, J., joins this concurrence in part and dissent in part.